57 A.3d 1102

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN C. BLANN, A/K/A JOHN C. BLAND,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 2012—Decided January 9, 2013.

Before Judges SIMONELLI,[1] ACCURSO and LISA.

*Laura B. Lasota,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Ms. Lasota,* of counsel and on the brief).

---

[1] Judge Simonelli did not participate in oral argument. She joins the opinion with counsel's consent. *R.* 2:13–2(b).

*Renee Kelleher,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (*James P. McClain,* Acting Atlantic County Prosecutor, attorney; *Jack R. Martin,* Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.S.C. (temporarily assigned).

Following a bench trial, defendant John C. Blann was convicted of two counts of first-degree robbery, *N.J.S.A.* 2C:15–1 (counts one and two) and one count of second-degree robbery, *N.J.S.A.* 2C:15–1 (count three). The trial judge denied the State's motion for an extended term, merged counts two and three into count one, and sentenced defendant to eighteen years, subject to a mandatory eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2.

Defendant raises the following arguments on appeal:

POINT I:

THE TRIAL COURT ERRED IN GRANTING [DEFENDANT'S] REQUEST TO WAIVE HIS RIGHT TO A JURY TRIAL WITHOUT APPLYING THE TEST SET FORTH BY *STATE V. DUNNE,* 124 *N.J.* 303 [590 *A.*2d 1144] (1991), FOR REVIEWING SUCH A REQUEST, THEREBY RESULTING IN A WAIVER THAT WAS NOT VOLUNTARY OR KNOWING. (*U.S. CONST.* AMENDS. VI, XIV; *N.J. CONST.* ART. I, PARS. 1, 9 & 10). (Not Raised Below)

POINT II:

BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [DEFENDANT] POSSESSED A DEADLY WEAPON OR PURPOSELY LED MITCHELL TO REASONABLY BELIEVE BY HIS GESTURES THAT HE POSSESSED A DEADLY WEAPON, THE TRIAL COURT SHOULD HAVE ACQUITTED [DEFENDANT] OF THE FIRST–DEGREE ROBBERY CHARGES.

POINT III:

THE SENTENCE IMPOSED, AN EIGHTEEN–YEAR STATE PRISON TERM SUBJECT TO NERA, WAS EXCESSIVE, UNDULY PUNITIVE, AND MUST THEREFORE BE REDUCED.

Although we find no error in the trial judge's assessment of the proofs or in his imposition of sentence, the absence of a signed jury waiver in accordance with *Rule* 1:8–1(a), coupled with the

judge's failure to question defendant on the record regarding his request to waive a jury and the judge's failure to state his reasons for granting defendant's request, make it impossible for a reviewing court to assess whether defendant's waiver was knowing and voluntary. Accordingly, we are constrained to reverse.

The facts as found by the trial judge can be briefly summarized. Walter Mitchell, a thirty-year resident of Atlantic City, was in his car, a white Mercedes, on his way for coffee at about 7:00 a.m. on August 6, 2010. While stopped at a red light at Kentucky and Pacific Avenues, Blann approached Mitchell's car, demanding money. Although Mitchell had his windows closed, his sunroof was open, and he could clearly hear Blann ranting at him from the sidewalk along the passenger side of his car.

Mitchell initially determined to ignore Blann, and stared out ahead of his car waiting for the light to change. Blann, however, became more agitated, starting off the sidewalk toward Mitchell's car while screaming profanities at Mitchell and still demanding money. When the light did not change, Mitchell finally yelled back at Blann, using equally profane language, that he did not have any money and that Blann should go bother someone else. Blann, who had walked to the front of Mitchell's car and returned to the sidewalk, again started toward Mitchell's car. This time, however, as he did so, Blann put his hand under his shirt as if reaching for something in his waistband, and screamed at Mitchell that he would "blow him away" if Mitchell did not give him money.

Mitchell, afraid that Blann had a gun and intended to use it, accelerated through the red light and fled. Mitchell flagged down a police car a few blocks away and excitedly told the officers that he had just been approached by a man yelling and screaming, and that the man had a gun. The officers directed Mitchell to get into their patrol car and direct them to where the incident had happened. When the officers neared the scene, Mitchell identified Blann and he was arrested. Although the officers searched the area, they found no gun.

Blann, who had several prior convictions, testified in his own behalf. He claimed that he was homeless, had been on the street for two days, and had not slept the night before. He admitted approaching Mitchell for money, but claimed that he was simply panhandling and that Mitchell swore at him first. Blann admitted that he yelled profanities at Mitchell when he refused to give him money, but denied that he had a gun or that he had threatened to blow Mitchell away. Blann claimed that he never made any threatening gestures toward Mitchell, other than "giving him the finger" as he walked away.

Although Blann claims that the State failed to prove that he possessed a gun or purposely led Mitchell to reasonably believe by his gestures that he possessed one, we disagree and find no error in the trial judge's assessment of the evidence. Our review of the factual findings of a trial judge is a deferential one. Our role is limited to a consideration of "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." *State v. Locurto*, 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999) (quoting *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)). We defer "to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." *Ibid.* (quoting *Johnson, supra,* 42 *N.J.* at 161, 199 *A.*2d 809).

Here, the trial judge noted that Blann and Mitchell were in substantial agreement about the altercation that took place between them. The only significant difference in their testimony was whether Blann threatened to "blow away" Mitchell while reaching a hand under his shirt as if going for a gun at his waist. In his thorough and well-reasoned written opinion, the judge explained the basis for his determination that Mitchell was the more credible of these witnesses on the only two issues that divided them.

Blann confirmed Mitchell's account that he had demanded money from Mitchell in a loud and argumentative manner, replete with

shouted profanities and, in Blann's words, "street talk." The judge found Blann's testimony self-serving, contradicting Mitchell only on the two facts most crucial to the State's case, and in his own interests. Further, the judge found Blann's description of his behavior as "aggressive begging," and his repeated admissions of guilt to that offense, in the precise language of the Atlantic City ordinance, suggested that Blann's "recollection may have been colored" by a desire to conform his conduct to that less serious offense.

In contrast, the judge found Mitchell's testimony free of any motive of untruthfulness. Mitchell's command of nuanced details of a quickly progressing and stressful situation, which he relayed consistently from his immediate notification of the police to his testimony at trial, convinced the court that he was a credible witness telling a credible narrative. The judge noted that encountering a person begging for money on a street in Atlantic City would probably not impel an average resident to seek immediate assistance from the police. Being reasonably certain, however, that one was being threatened by a man with a gun would likely impel that same person to run a red light and go immediately to the police for help.

■■■■ We likewise find no error in the trial court's imposition of sentence. A trial court possesses considerable discretion in sentencing. *State v. Dalziel*, 182 *N.J.* 494, 500, 867 *A.*2d 1167 (2005). Consequently, our review of a sentence is limited. *State v. Miller*, 205 *N.J.* 109, 127, 13 *A.*3d 873 (2011). Our basic responsibility is to assure that the aggravating and mitigating factors the trial judge found are supported by competent, credible evidence in the record. *Ibid.*; *State v. Bieniek*, 200 *N.J.* 601, 608, 985 *A.*2d 1251 (2010).

Applying those standards, we discern no error in defendant's sentence. There is no dispute that defendant was eligible for an extended-term sentence based on his prior criminal convictions. *N.J.S.A.* 2C:44–3a. The trial judge, however, determined that Blann was a drug addict who commits crimes "in order to feed his

drug habit" and "that while he need[ed] to be kept off the streets in order to protect the public for a substantial period of time, based on his present age," it was not necessary "to impose an extended term to achieve the two goals of the sentence, which are protection of the public and to give [defendant] access through the New Jersey State Prison system to all possible drug programs." The judge determined that a sentence on the high end of the ordinary term would suffice to achieve those goals. In addition, the record amply supports the application of aggravating factors three, *N.J.S.A.* 2C:44–1a(3) (the risk that defendant will commit another offense), six, *N.J.S.A.* 2C:44–1a(6) (extent of defendant's prior criminal record), and nine, *N.J.S.A.* 2C:44–1a(9) (the need to deter defendant and others from violating the law), and mitigating factor two, *N.J.S.A.* 2C:44–1b(2) (defendant did not contemplate that his conduct would cause or threaten serious harm). The sentence imposed was within the statutory guidelines, and it does not shock our judicial conscience. *State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.*2d 370 (1984).

We turn now to the jury waiver. *Rule* 1:8–1(a), the provision in the Court Rules relating to non-jury trials in criminal cases, requires that a defendant put in writing his request to waive trial by jury and obtain the approval of the court for such waiver. The State concedes that there is no written waiver in this record as required by *Rule* 1:8–1(a). Over forty years ago in *State v. Paolino,* 110 *N.J.Super.* 284, 265 *A.*2d 398 (App.Div.), *certif. denied,* 57 *N.J.* 127, 270 *A.*2d 30 (1970), we determined that the absence of the written consent to waiver required by the rule "does not go to the jurisdiction of the court to try the case without a jury," so long as the "trial record indicates a thorough under-standing of, and unequivocal assent in open court by the defendant, personally, to his attorney's agreement to waive jury trial." *Id.* at 285, 265 *A.*2d 398.

The trial judge addressed Blann two times on the record regarding the waiver. The first time was at the pre-trial confer-

ence. We quote the portion of the exchange relating to the jury waiver in full.

> [Defense Counsel]: Judge, I have discussed with Mr. Blann his right to a jury trial on this matter. Mr. Blann has advised me that he is willing to waive his right to a jury trial in this matter. Judge, I have completed the pretrial memorandum. Mr. Blann has initialed it and the Prosecutor has signed it as well.
>
> . . . .
>
> THE COURT: All right. And you wish to have a bench trial to the Court?
>
> THE DEFENDANT: Yes, sir. Yes, sir.
>
> THE COURT: Yes?
>
> THE DEFENDANT: Yes.

The second time was a month later on the first day of trial. Again, we quote the portion of the exchange relating to the jury waiver in full.

> THE COURT: All right. I understand that, [counsel], you discussed this matter with your client and he hereby has waived a jury.
>
> [Defense Counsel]: That's correct, Judge.
>
> THE COURT: All right. Is that correct, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Call the first witness.

The State contends that the quoted colloquies are sufficient to confer jurisdiction on the court to try Blann without a jury. We disagree.

In *Patton v. United States*, 281 *U.S.* 276, 50 *S.Ct.* 253, 74 *L.Ed.* 854 (1930), the United States Supreme Court determined that Article III, Section 2, Clause 3 of the United States Constitution and the Sixth Amendment conferred the right of trial by jury as a protection of the accused, as opposed to part of the structure of government, which the accused may forego at his election. *Id.* at 298, 50 *S.Ct.* at 258, 74 *L.Ed.* at 863. Notwithstanding, the Court held that the value and appropriateness of jury trial has been so long established that

> [n]ot only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant.

[*Id.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870.]

The Court went on to address the role of the trial court in approving a defendant's request to waive a jury in words that inform our decision in this case:

> And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.
>
> [*Id.* at 312–13, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870.]

In *Singer v. United States*, 380 *U.S.* 24, 85 *S.Ct.* 783, 13 *L.Ed.*2d 630 (1965), a case challenging the constitutionality of *Rule* 23(a) of the Federal Rules of Criminal Procedure, the federal analog to *Rule* 1:8–1(a),[2] the defendant argued that he had a constitutional right to waive a jury trial as he determined in his own best interest, regardless of whether the prosecution and the court were willing to acquiesce in his waiver. The Court disagreed, holding that while a defendant in a federal criminal case has an unconditional right guaranteed by Article III, Section 2, and the Sixth Amendment to a trial by jury, there is no correlative federal constitutional right to a bench trial. *Id.* at 34, 85 *S.Ct.* at 790, 13 *L.Ed.*2d at 637. The Singer Court reaffirmed that trial by jury as established by the Constitution remains the "normal and ... preferable mode of disposing of issues of fact in criminal cases." *Id.* at 35, 85 *S.Ct.* at 790, 13 *L.Ed.*2d at 638 (quoting *Patton, supra,* 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870). Reviewing these cases, our Supreme Court in *State v. Dunne,* 124 *N.J.* 303, 311–12, 590 *A.*2d 1144 (1991), determined that nothing in New Jersey's history or tradition suggests that New Jersey's constitutional provision for trial by jury should be interpreted in any significantly-different manner.

*Dunne* involved what the Court characterized as "a bizarre murder" in the South Mountain Reservation in 1986. *Id.* at 306,

---

[2] Unlike its federal counterpart, *Rule* 1:8–1(a) does not require approval of the prosecutor to effect a jury waiver. The *Rule* provides only that the prosecutor is entitled to notice and an opportunity to be heard.

590 A.2d 1144. The defendant had made a pre-trial motion for a non-jury trial because he planned to mount an insanity defense requiring psychiatric testimony on the "abnormal homosexual fantasies that may have moved [him] to attack the victim." *Id.* at 307, 590 A.2d 1144. The motion was denied and the jury convicted him of murder. On appeal, the Court addressed the factors that trial judges are to consider in determining a motion to waive a jury trial in a criminal case. The Court identified three factors that the trial court must take into account. First, the court must determine "whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel." *Id.* at 317, 590 A.2d 1144. Second, that "the waiver is tendered in good faith" as opposed to "as a stratagem to procure an otherwise impermissible advantage." *Ibid.* And third, the trial court must determine, "with an accompanying statement of reasons," whether, weighing all relevant factors, including the gravity of the crime, the position of the State, the duration and complexity of the State's case, the amenability of the issues to jury resolution, the existence of a highly-charged emotional atmosphere, the presence of particularly-technical matters, and the anticipated need for numerous evidentiary rulings, "it should grant or deny the defendant's request in the circumstances of the case." *Ibid.* The Court emphasized the need for a statement of reasons that "will give structure to the trial court's discretionary judgment and will soundly guide appellate review." *Id.* at 317–18, 590 A.2d 1144 (citing *Roth, supra,* 95 N.J. at 363–64, 471 A.2d 370).

*Dunne,* of course, is a case in which the trial judge had denied the defendant's request for a bench trial. We have, however, recently considered an appeal from the grant of the defendant's request to waive a jury in *State v. Jackson,* 404 N.J.Super. 483, 962 A.2d 572 (App.Div.), *certif. denied,* 199 N.J. 129, 970 A.2d 1046 (2009). Jackson was to be tried for the murder of a drug dealer. *Id.* at 490, 962 A.2d 572. Against his counsel's advice, he sought to waive a jury trial. *Id.* at 486, 962 A.2d 572. Jackson executed a waiver of trial form which his attorney had reviewed with him. *Id.* at 487, 962 A.2d 572. After the judge conducted a painstaking

inquiry on two occasions, which included asking the defendant to explain in his own words why he wanted to waive the jury, the judge granted the motion. *Id.* at 486–88, 962 *A.*2d 572. The judge put a statement on the record detailing his explanation to the defendant of the charges against him and the sentences he could receive if convicted, his confirmation of the defendant's understanding that a jury would be composed of twelve persons, that he and his counsel would participate in jury selection, and that any verdict would have to be unanimous. *Id.* at 487–88, 962 *A.*2d 572. The judge also inquired as to whether the defendant was under the influence of any drugs, alcohol, medications, or anything else that would impair his ability to understand the proceedings, and whether he had been forced or threatened into waiving his right to a jury trial, and made findings as to the defendant's demeanor. *Ibid.* Following trial, the judge convicted defendant of all charges and sentenced him to fifty years with an eighty-five percent period of parole ineligibility and a consecutive five-year term with no parole eligibility. *Id.* at 488, 962 *A.*2d 572.

On appeal, Jackson contended that the judge erred in granting his motion to waive a jury trial because the court's findings were only focused on whether his waiver was voluntary and knowing and had ignored the other *Dunne* factors. We rejected that argument, reasoning that the remaining *Dunne* factors are all focused on assuring that the grant of a waiver will not undermine public confidence in the criminal justice system. We concluded that

> it would be antithetical to the objective of maintaining public confidence in the criminal justice system, which the other *Dunne* factors were intended to guide a court in considering, to grant a defendant who has voluntarily and knowingly waived his right to a jury trial a new trial before a jury solely because the trial court misapplied those factors.
>
> [*Id.* at 491, 962 *A.*2d 572.]

Accordingly, we held that "a defendant who has persuaded the trial court to grant his motion to waive the right to a jury trial may challenge that decision only if he can show that his waiver was not voluntary and knowing." *Id.* at 490, 962 *A.*2d 572.

■ There is nothing in this record from which we can conclude that Blann's waiver was voluntary and knowing. There was no signed jury waiver form as required by *Rule* 1:8–1(a). The trial judge engaged in no colloquy with defendant to ascertain his understanding of his constitutional right to a jury trial and whether his request to waive that right was knowing and voluntary, and made no findings to that effect on the record.

■ As the United States Supreme Court determined over eighty years ago in *Patton*, the trial judge's role in preserving the right of the accused to trial by jury and maintaining the jury as a fact finding body in criminal cases is of such importance that it cannot "be discharged as a mere matter of rote" but must be undertaken "with sound and advised discretion." *Patton*, *supra*, 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870. There is no doubt on this record that the experienced trial judge did not treat defendant's request to waive a jury with the same care that he took in making factual findings and imposing sentence. We think the federal and state cases impose an affirmative duty on trial judges to treat those requests with that same degree of attention. It is imperative that a trial judge considering a defendant's request to waive a jury trial consider each of the *Dunne* factors and state his or her reasons for granting or denying the request on the record.[3] *Dunne*, *supra*, 124 *N.J.* at 317–18, 590 *A.2d* 1144.

---

[3] We are aware of our decision in *State v. Shawn Jackson*, 272 *N.J.Super.* 543, 553, 640 *A.2d* 863 (App.Div.1994), *certif. denied*, 142 *N.J.* 450, 663 *A.2d* 1358 (1995), in which we concluded that the Court in *Dunne* "did not impose an affirmative obligation upon the trial court to require verbalization on the record by a defendant seeking to waive a trial by jury." The defendant in *Shawn Jackson*, however, had executed a written waiver pursuant to *Rule* 1:8–1(a). It was on this basis that we distinguished our holding in *Shawn Jackson* from our prior holding in *State v. Wyman*, 232 *N.J.Super.* 565, 557 *A.2d* 1043 (App.Div. 1989). *Shawn Jackson*, *supra*, 272 *N.J.Super.* at 549–550, 640 *A.2d* 863 ("Clearly our statement in *Wyman* implies that in requiring verbalization by a defendant, an 'express and understanding waiver' is required where the waiver is not in writing. Confirmatory verbalization of a defendant's written waiver is not specifically mandated by *Rule* 1:8–1(a).").

■ Although the State argues that defendant had good strategic reasons for preferring a bench trial, this is nothing more than surmise, as there is no record from which we can judge defendant's actual reasons for requesting the waiver and whether such request was personal, knowing and voluntary.[4] Here, defense counsel merely announced to the court that defendant "is willing to waive his right to a jury trial in this matter." As we held in *Wyman*, a defendant's mere acquiescence in proceeding without a jury is not sufficient to constitute a waiver of his right to a jury trial. *Wyman, supra,* 232 *N.J.Super.* at 568, 557 *A.2d* 1043; *see also State v. Mazza,* 330 *N.J.Super.* 467, 472, 750 *A.2d* 133 (App.Div.2000) (defense counsel may not waive defendant's constitutional right to trial by jury). In the absence of a written jury form waiver required under *Rule* 1:8–1(a), or an express and understanding waiver by defendant personally on the record, he cannot justly be deemed to have waived his fundamental constitutional right to a jury trial and the trial court was without jurisdiction to try the case without a jury.

We address only briefly the thoughtful remarks of our dissenting colleague. We emphasize that our disagreement is a narrow one. Our dissenting colleague agrees with us that the judge's handling of the jury waiver was inadequate and that a more expansive on-the-record colloquy should take place in all cases in which the defendant asks to waive a jury. We agree with him that the Criminal Practice Committee should consider whether *Rule* 1:8–1(a) should be revised to incorporate this requirement into the *Rule.* We suspect that the lack of an express requirement in the

As the discussion in the text makes plain, however, we are of the view that *Dunne* imposes an affirmative obligation on trial judges to voir dire the defendant, on the record, in every case in which a defendant seeks to waive a jury notwithstanding the lack of any requirement in *Rule* 1:8–1(a). Thus, although not essential to the holding in this case, we note our disagreement with that aspect of *Shawn Jackson* holding to the contrary.

[4] We note that the prosecutor could, and should, have requested the court to voir dire defendant on the record as to his reasons for requesting a bench trial.

*Rule,* notwithstanding the Court's direction in *Dunne,* guided the actions of the able trial judge in this instance and may likewise inform the actions of other judges in similar circumstances. We also agree that the Committee should take up the jury waiver form with the goal of making it more informative and uniform.

■ Our disagreement centers on the remedy in this particular case. Unlike our colleague, we believe the jury waiver form, although in need of revision, has been an important point of distinction in our prior cases and remains so here. Because the United States and the New Jersey Constitutions guarantee defendant a trial by jury, compliance with these constitutional mandates is an essential jurisdictional prerequisite to the court's authority to deprive him of his liberty. When the right is properly waived, trial by jury is no longer among the necessary elements of the court's jurisdiction to proceed to conviction and sentence. *Cf. Johnson v. Zerbst,* 304 *U.S.* 458, 467–68, 58 *S.Ct.* 1019, 1024, 82 *L.Ed.* 1461, 1468 (1938) ("Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence.").

■ A signed waiver confers jurisdiction on the court to try defendant without a jury. Although a painstaking inquiry of a defendant by the judge as to why the defendant seeks to waive a jury is always good practice that we agree should be expressly required, it is essential in the absence of a signed jury waiver form in order to insure the court has jurisdiction to proceed without a jury. This is the import of the holdings of *Paolino* and *Wyman.*[5]

---

[5] Our dissenting colleague quotes *Patton* to suggest that the United States Supreme Court has determined that the right to jury trial is not jurisdictional. *Infra* at 240, 57 *A.3d* at 1114. In *Patton,* the Court determined that the framers of the Constitution did not incorporate trial by jury into the structure of

While we can certainly agree that a defendant in a PCR proceeding may raise the adequacy of his informed consent to a waiver appearing on the face of the record, we think it inappropriate to have to search beyond the four corners of that record to determine the threshold issue of the court's jurisdiction. *See R.* 3:22-2(b). Because this record contains neither the written jury form waiver required under *Rule* 1:8-1(a), nor an express and understanding waiver by defendant personally [6] on the record, we believe reversal is required.

The judgment of conviction and order of commitment are reversed and the matter is remanded to the trial court for a new trial.

LISA, J.A.D. (retired and temporarily assigned on recall), dissenting.

I agree with my colleagues that the trial record contained sufficient credible evidence to support the judge's finding that defendant was guilty of first-degree robbery, and that the sentence constituted an appropriate exercise of discretion. I also agree that the judge's handling of the jury waiver was inadequate. However, I do not agree that reversal is warranted on this record, where defendant, in open court on two separate occasions, with

---

government, which a defendant is not free to alter. *Patton, supra,* 281 *U.S.* at 297–98, 50 *S.Ct.* at 257–58, 74 *L.Ed.* at 862–63. So in that sense trial by jury is not "jurisdictional" but may be waived by a defendant at his election. We, however, do not read *Patton* to suggest that a trial court has jurisdiction to deprive a defendant of liberty or property by proceeding with a bench trial in the absence of a valid jury waiver by the defendant. *Cf. Johnson v. Zerbst, supra,* 304 *U.S.* at 467–68, 58 *S.Ct.* at 1024, 82 *L.Ed.* at 1468 (1938) (holding that a trial court does not have jurisdiction to deprive a defendant of liberty or property by proceeding with a jury trial in the absence of defendant's valid waiver of his Sixth Amendment right to counsel).

[6] Notwithstanding *Patton,* at least one member of the Supreme Court believes that the Court has not squarely addressed the issue of whether a defendant's waiver of trial by jury must be personal or may be accomplished through counsel. *See Gonzalez v. United States,* 553 *U.S.* 242, 254–56, 128 *S.Ct.* 1765, 1773–74, 170 *L.Ed.2d* 616, 628–29 (2008) (Scalia, J., concurring).

the advice of counsel, personally and affirmatively requested that his right to be tried by a jury be waived and that his case be tried to the court. I would affirm defendant's conviction without prejudice to his right to seek further relief in a post conviction relief (PCR) proceeding, where the record can be more fully developed. Therefore, I respectfully dissent.

The majority has set forth the colloquy directly dealing with the jury waiver issue that occurred at the pretrial conference on February 4, 2011, and then about a month later on March 9, 2011, the first day of trial. *Ante* at 227–29, 57 *A.*3d at 1106–07. Related colloquy provides further context. At the pretrial conference, after a discussion on the record of the status of plea negotiations, the judge recessed the matter, directing defense counsel to complete the pretrial memorandum and to discuss the case privately with defendant. The judge told defendant's attorney to "go over with [defendant] his exposure so that it's clear, when you come back."

When the case again came before the court later that day, defense counsel reported, in defendant's presence, that he had explained to defendant that his extended term exposure on this first-degree crime was life imprisonment with sixty-three and two-thirds years of parole ineligibility. He assured the court: "I have discussed that in detail with Mr. Blann. He understands that." Defense counsel then informed the court that he had "discussed with Mr. Blann his right to a jury trial," and defendant "has advised me that he is willing to waive his right to a jury trial in this matter."

The prosecutor then outlined her anticipated trial proofs. The judge asked defendant if he understood "all that," to which defendant responded, "Yes, sir." The judge then asked defendant: "All right. And you wish to have a bench trial to the [c]ourt?" Defendant responded, "Yes, sir. Yes, sir." The judge followed with, "Yes?" Defendant responded, "Yes."

About a month later, on March 9, 2011, the case again came before the same judge for trial. The judge addressed defense

counsel: "I understand that ... you discussed this matter with your client and he hereby has waived a jury." After counsel responded affirmatively, the judge addressed defendant directly, asking if that was correct. Defendant responded, "Yes, sir." The bench trial then commenced.

We therefore have circumstances in which defendant, represented by counsel at all relevant times, affirmatively and personally advised the court, upon the advice of counsel, that he wished to waive a jury trial. He did so unequivocally on each occasion. He did so after being fully informed of the seriousness of the crime for which he was to be tried and the very severe sentencing exposure he faced. Defendant did not sign a written waiver as required by *Rule* 1:8–1(a). Other than asking defendant to confirm that he wished to waive a jury and have a bench trial, the judge engaged in no other colloquy with defendant, and the judge made no findings on the record as to whether the waiver was knowing and voluntary.

It has long been established that the requirement for a written waiver is procedural and is not necessary to the jurisdiction of the court to try a criminal case without a jury. *State v. Paolino*, 110 *N.J.Super.* 284, 285–86, 265 *A.*2d 398 (App.Div.), *certif. denied*, 57 *N.J.* 127, 270 *A.*2d 30 (1970). In that case, the defendant entered the waiver through his attorney without signing a written waiver form. *Id.* at 285, 265 *A.*2d 398. Without providing any details, we stated only that "[t]he trial record indicates a thorough understanding of, and unequivocal assent in open court by the defendant, personally, to his attorney's agreement to waive jury trial." *Ibid.* Our opinion makes no mention of any findings by the trial court. Thus, *Paolino* provides no guidance as to the specific circumstances underlying the waiver, which we upheld on appeal.

Before examining cases which do provide some guidance, I address the majority's contention that defendant's conduct here amounted to nothing more than acquiescence in a bench trial, which we have found to be insufficient to constitute an effective

waiver. *See State v. Wyman,* 232 *N.J.Super.* 565, 568, 557 *A.*2d 1043 (App.Div.1989). We held in that case that the defendant's

mere acquiescence in proceeding without a jury ... is not sufficient to constitute a waiver of his right to a jury trial .... [where] [t]he trial transcript is devoid of any discussion between the trial court and [the] defendant concerning an express and understanding waiver of his right to a jury trial or even an express and understanding assent to any waiver of that right by his attorney.

[*Ibid.*]

Thus, the trial record contained no mention whatsoever of the jury waiver issue and accordingly contained no basis for concluding that the defendant knew he was entitled to a jury trial. *See also Landry v. Hoepfner,* 818 *F.*2d 1169, 1177–78 (5th Cir.1987) (finding in a habeas proceeding that the defendant, who raised on appeal for the first time that he should have been entitled to a jury trial for driving while intoxicated, had not waived the right, where he was uncounseled at trial and the trial judge did not advise him of a right to a jury trial because the Louisiana statute did not provide for jury trials in such cases), *rev'd. on other grounds on reh'g en banc,* 840 *F.*2d 1201 (5th Cir.1988), *cert. denied,* 489 *U.S.* 1083, 109 *S.Ct.* 1540, 103 *L.Ed.*2d 844 (1989).

The case before us is clearly not a "mere acquiescence" case. The waiver issue was discussed on two separate occasions. The record makes clear that defendant knew he had the right to a jury trial and that he personally expressed his wish to waive that right. Acknowledgement is not acquiescence.

In its mere acquiescence discussion, the majority also cites *State v. Mazza,* 330 *N.J.Super.* 467, 472, 750 *A.*2d 133 (App.Div.2000), for the proposition that "defense counsel may not waive defendant's constitutional right to trial by jury." *Ante* at 233, 57 *A.*3d at 1109–10. In *Mazza,* the defendant was not present at trial, and, as the trial was about to commence *in absentia,* defense counsel waived defendant's right to a trial by jury and asked for a bench trial. *Id.* at 469–70, 750 *A.*2d 133. *Mazza* has no bearing on the issue before us in this case.

The majority places its principal reliance on three cases, *Patton v. United States,* 281 *U.S.* 276, 50 *S.Ct.* 253, 74 *L.Ed.* 854 (1930);

*State v. Dunne,* 124 *N.J.* 303, 590 *A.*2d 1144 (1991); and *State v. Jackson,* 404 *N.J.Super.* 483, 962 *A.*2d 572 (App.Div.), *certif. denied,* 199 *N.J.* 129, 970 *A.*2d 1046 (2009). As a basis for its holding, the majority uses the broad language at the end of *Patton* regarding the importance of preserving jury trials as the normal mode of deciding criminal cases, as later referenced by the New Jersey Supreme Court in *Dunne* in fashioning a three-factor test for trial judges when considering waiver requests. *Ante* at 228–31, 57 *A.*3d at 1106–08. It then considers the facts revealed by the trial record in *Jackson* as a basis for reaching the conclusion that unless a similar trial record is made or, alternatively, a defendant signs a waiver form as prescribed by *Rule* 1:8–1(a), a waiver cannot be effective and a defendant is automatically enti- tled to reversal of his or her conviction and a new trial. *Ante* at 230–33, 57 *A.*3d at 1108–10.

My analysis of those cases does not lead me to the same conclusion. The *Patton* language quoted by the majority begins with the phrase "[n]ot only must the right of the accused to a trial by a constitutional jury be jealously preserved, but. . . ." *Patton, supra,* 281 *U.S.* at 312, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870. All of the broad language that follows is directed to consideration, not of protecting a defendant's right to a jury trial, but to the interests of the government and the public in preserving the integrity of the criminal justice system. That same dichotomy is reflected in the *Dunne* factors, *supra,* 124 *N.J.* at 317, 590 *A.*2d 1144 the first requiring a determination that the defendant has voluntarily, knowingly, and competently waived his jury trial right with advice of counsel, and the remaining two being "primarily designed to provide assurance that the grant of the waiver will not undermine the public's confidence in the criminal justice system." *Jackson, supra,* 404 *N.J.Super.* at 490, 962 *A.*2d 572.

Thus, the only issue before us is whether the trial record contains sufficient evidence to support the conclusion that defen- dant's waiver was knowing and voluntary under the totality of the circumstances. *See State v. Koedatich,* 112 *N.J.* 225, 328, 548 *A.*2d

939 (1988), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989). This assessment requires a close consideration of cases, like this one, in which a defendant successfully sought a waiver, was convicted at a bench trial, and then sought to overturn the conviction on the ground that his or her waiver was constitutionally infirm.

The seminal *Patton* case is instructive. The holding of the case is that, because the purpose of the constitutional provision granting the right to a jury trial is to "preserv[e] the right of trial by jury primarily for the protection of the accused," the provision "is not jurisdictional, but was meant to confer a right upon the accused which he [or she] may forego at his [or her] election." *Patton, supra,* 281 *U.S.* at 297–98, 50 *S.Ct.* at 257–58, 74 *L.Ed.* at 862–63. The Court conditioned such waivers on "the express and intelligent consent of the defendant" and the approval of the trial court.[1]  *Id.* at 313, 50 *S.Ct.* at 263, 74 *L.Ed.* at 870. Applying that standard, the Court affirmed the order of the District Court authorizing the waiver. *Ibid.*

The Court described the facts underlying its affirmance as follows:

[After a juror became ill and could not continue to serve] it was stipulated in open court by the government and counsel for defendants, defendants personally assenting thereto, that the trial should proceed with the remaining eleven jurors. To this stipulation the court consented after stating that the defendants and the government both were entitled to a constitutional jury of twelve, and that the absence of one juror would result in a mistrial unless both sides should waive all objections and agree to a trial before the remaining eleven jurors. Following this statement, the stipulation was renewed in open court by all parties. During the colloquy counsel for defendants stated that he had personally conferred with all counsel and with each of the defendants individually, and it was the desire of all to finish the trial of the case with the eleven jurors if the defendants could waive the presence of the twelfth juror.

The trial was concluded on the following day, and a verdict of guilty was rendered by the eleven jurors.

---

[1] The Court also required the consent of the government. New Jersey has not adopted this requirement, but requires notice to the prosecuting attorney and an opportunity to be heard. *R.* 1:8–1(a). In the case before us, the prosecutor had no objection to the waiver.

[*Id.* at 286–87, 50 *S.Ct.* at 254, 74 *L.Ed.* at 857.]

These facts are substantially the same as those in the record before us. Indeed, the facts in our case might provide a stronger case for waiver. Unlike in *Patton*, the waiver was asserted twice on two separate dates, thus giving defendant an opportunity in the interim to reconsider his position. But he was unequivocal in asserting the waiver both times. As in our case, there was no written waiver in *Patton*, nor was there any mention in the Supreme Court's opinion of any detailed colloquy or findings by the District Court.

As the majority points out, *Dunne* was a case in which the trial court refused to grant the defendant's request for a jury waiver. The Court's holding is simply that defendants do not possess a unilateral right to a non-jury trial and, in the circumstances of that case, the trial court did not abuse its discretion in denying the waiver. *Dunne, supra,* 124 *N.J.* at 306, 590 *A.2d* 1144. The case did not deal with the voluntariness of the waiver request. The Court formulated standards to guide discretion. As previously stated, the second and third standards pertain to maintaining public confidence in the integrity of the criminal justice system. Although the Court found no abuse of discretion in the trial court's denial of the waiver request by reference to the second and third standards, the Court noted: "Even in capital cases, judges have accepted jury waivers. We rather suspect that in many cases waiver requests are routinely granted." *Id.* at 316, 590 *A.2d* 1144 (internal citation omitted). Because the Court affirmed denial of the waiver request, it did not address the first prong, which requires that the request be knowing and voluntary. Therefore, *Dunne* does not provide guidance to the issue before us.

Three years after *Dunne* was decided, this court considered a jury waiver that had been granted in a capital case, pertaining to both the guilt and penalty phases of the trial, in a case involving another defendant named Jackson. *State v. Jackson,* 272 *N.J.Super.* 543, 640 *A.2d* 863 (App.Div.1994), *certif. denied,* 142 *N.J.* 450, 663 *A.2d* 1358 (1995). The judge found the defendant guilty of

murder, but found that the penalty phase evidence did not support a death sentence and imposed an aggregate sentence of life plus fifteen years imprisonment with a thirty-five year parole disqualifier. *Id.* at 546, 640 *A*.2d 863.

These are the facts upon which the judge in that case granted the waiver. At a pretrial proceeding on March 22, 1991, one of the defendant's attorneys advised the court as follows:

I have discussed with Mr. Jackson his options with regard to trial, whether it be by jury or by a bench trial before the [j]udge alone. After having gone over this matter with Mr. Jackson, we have executed a request to be tried by the [j]udge and hereby waive the jury application.

[*Id.* at 548, 640 *A*.2d 863.]

The prosecutor then consented to the waiver, *id.* at 548–49, 640 *A*.2d 863, after which the judge addressed the defendant and approved the waiver:

Q. You're Shawn Jackson?

A. Yes.

Q. How old are you, Mr. Jackson?

A. Twenty-one.

Q. Your lawyer has told me that you want to waive a trial by jury in the murder charges which is a capital case, as you know, and that you want to be tried by the [c]ourt without a jury both as to the guilt phase and the penalty phase if you're found guilty. Is it true that you want to waive a jury trial?

A. Yes.

Q. And have you signed this form here? Is this your signature?

A. Yes.

Q. You signed this in court today?

A. Yes.

. . . .

THE COURT: The [c]ourt is satisfied that Mr. Jackson [is] represented by competent counsel in the person of Kevin Lewis and Charles Jurman. He understands his rights. He understands his rights to be tried by a jury. He waives that right, has executed a waiver in writing.

... Do you have anything you want to say or any questions, Mr. Jackson?

THE DEFENDANT: No.

[*Id.* at 549, 640 *A*.2d 863.]

There was no other discussion in the trial record about the jury waiver until the next court appearance on the day set for trial, May 14, 1991. *Id.* at 551, 640 *A*.2d 863. In response to the

judge's inquiry, defense counsel said he had confirmed with the defendant that the waiver was "still in effect." *Ibid.* The judge then asked the defendant if that was correct, to which the defendant responded, "Yes." *Ibid.*

We upheld the waiver. We noted that *Rule* 1:8–1(a) does not require confirmatory verbalization by a defendant who signs a written waiver. *Id.* at 550, 640 *A.*2d 863. We also noted that the validity of waivers should be evaluated under a totality of circumstances analysis and the fact that a defendant was represented by counsel is relevant in that regard. *Ibid.* We also found it significant that the defendant presented no evidence (such as an affidavit or certification alleging relevant facts) "to support his argument that his jury trial waiver was other than a knowing and intelligent decision made by him with advice of counsel." *Id.* at 551, 640 *A.*2d 863. Finally, we found it significant that the defendant had a second opportunity, two months after initially waiving, to withdraw his waiver, and he did not do so. Thus, in the context of that capital murder prosecution, "we conclude[d] that the failure of the trial court . . . to elicit the information necessary to determine if [the] defendant's waiver should be rejected . . . did not possess a clear capacity to produce an unjust result." *Id.* at 553, 640 *A.*2d 863. We accordingly rejected the defendant's challenge to his conviction on that ground. *Ibid.*

The only distinguishing circumstance between that case and this one is that the defendant signed a written waiver form in the former. However, that distinction is substantially marginalized in light of the contents of the standard form used to request a jury waiver.[2] The jury waiver request form in use in Atlantic County

---

[2] No official form for use throughout the State has been promulgated. A sample form is published in Robert E. Knowlton & David R. Coburn, *New Jersey Criminal Procedure*, Form 53, p. 459 (Lawyers Co-operative Publishing Co. 1976). A review of the forms in use on a county-by-county basis throughout the state reveals that this sample form has been adopted and is commonly in use, including in Atlantic County, where the case before us was tried. I therefore refer to it as the "standard" form.

at the time of defendant's waiver, and still in use, states in its entirety: [3]

> The above-named defendant, charged with _____, having been advised of the nature of the charge(s) against him/her and of his/her right to trial by jury, does hereby waive trial by jury, and requests to be tried by the Court.

Had defendant signed a written waiver request form, he would have said in writing no more than he said verbally in open court. Based on the very limited colloquy, the record clearly establishes that defendant understood the nature of the charges against him and the severe sentencing exposure he faced. The record also clearly establishes that defendant understood his right to a jury trial and that he wished to waive it. Thus, substantively, defendant said the same thing verbally in court as he would have said in writing.

According to the majority, the case law dictates that to render a waiver constitutionally effective, either a signed waiver form or extended colloquy, such as occurred in the more recent Jackson case, is necessary. I cannot reconcile these alternatives as being substantially equivalent. I realize that signing a written document carries with it a degree of solemnity that has significance. However, so does personally making the same assertion to a judge in open court. *See United States v. Ricks*, 475 *F.*2d 1326, 1327–28 (D.C.Cir.1973) (With less colloquy than in our case and no written waiver, the Court of Appeals held that the waiver, made with the advice of counsel, was freely and voluntarily entered, and thus valid, noting that "an oral stipulation entered into, under such circumstances, carries more inherent protection of the defendant's basic rights than a written stipulation executed by the defendant out of court and out of the presence of the judge, where no record is made of the arguments or circumstances which were advanced to bring it about.").

It is notable that in the more recent Jackson case, the defendant was charged with murder and he requested a jury trial waiver

---

[3] A copy of the Atlantic County form is attached to this opinion as an appendix.

against the advice of his attorney. *Jackson, supra,* 404 *N.J.Super.* at 486, 962 *A.*2d 572. In such circumstances, a more expansive colloquy was certainly warranted. Further, as I will discuss, it is my view that a more expansive colloquy than occurred in this case should take place in all cases where a jury waiver is requested. However, I would not conclude, as the majority apparently has, that in the absence of a written waiver, colloquy comparable to that which occurred in the more recent Jackson case is essential to effect a constitutionally valid waiver.

Defendant has provided nothing to suggest that he did not have a sufficient understanding of his right to a trial by jury to effectively waive it. In the appellate brief filed on his behalf, his counsel argues that defendant's level of knowledge is "unclear," that it is "highly unlikely" that defendant fully understood the function of a jury or the advantages and disadvantages of waiver, and that he "may not have understood" the need for a unanimous verdict or of his right to participate in the jury selection process. Counsel speculates further that it is "unknown" whether pressure was applied or improper promises were made, and that it is "unclear" whether defendant was under the influence of drugs or alcohol.

Such speculation, in my view, should not entitle a defendant to an automatic second bite of the trial apple on the sole basis that he was convicted at the bench trial he twice requested in open court with the advice of counsel. If defendant wishes to pursue these issues further, he is not without a remedy. He can raise in a PCR proceeding his claim that he was substantially denied in the trial proceedings his constitutional right to a trial by jury. *R.* 3:22–2(a). In the circumstances of this case, enough did transpire in the trial court proceedings to place the onus on defendant to establish a lack of knowledge and understanding at the time of his waiver.

Because the facts needed to support defendant's assertion lie outside the trial record, a PCR proceeding is the appropriate forum for its consideration. *State v. Preciose,* 129 *N.J.* 451, 459–

60, 609 *A*.2d 1280 (1992). At oral argument, defendant's attorney continually insisted that PCR is not the appropriate forum because she was not alleging ineffective assistance of counsel on the waiver issue, but was relying on the trial court's inadequate colloquy as the basis for defendant's entitlement to a new trial. However, PCR proceedings are not limited to ineffective assistance of counsel claims. Deprivation of a fundamental constitutional right, however caused, is cognizable in a PCR proceeding. Indeed, such claims can arise in circumstances where a defendant had no counsel at all and the assertion is that he or she was deprived of the right to counsel. Likewise, a deprivation of due process claim may arise by virtue of a prosecutor's conduct in withholding potentially exculpatory evidence. In any such circumstances, including these, where the trial record is inadequate to support a defendant's claim of deprivation of a constitutional right, the appropriate remedy is affirmance without prejudice to the defendant's right to seek further review in a PCR proceeding. *State v. Sparano,* 249 *N.J.Super.* 411, 419, 592 *A*.2d 608 (App.Div. 1991).

Notwithstanding my conclusion that the record establishes that defendant understood the basic choice he had, namely whether to have his guilt or innocence decided by a jury made up of members of the community or by the judge, and he made that choice affirmatively in open court with the advice of counsel, I also believe the better practice is for judges in these circumstances to engage in colloquy with defendants to further be assured that, before granting a waiver, a defendant possesses a deeper understanding of the choice he or she has. Some federal courts have imposed such requirements pursuant to their supervisory authority,[4] while recognizing that the requirements are not of constitutional dimension.

---

[4] Our Supreme Court possesses supervisory authority over the courts pursuant to Article VI, Section 2, Paragraph 3 of the New Jersey Constitution. *See, e.g., State v. Delgado,* 188 *N.J.* 48, 63, 902 *A*.2d 888 (2006) (conditioning admissibility of an out-of-court identification on a written record detailing the identification

For example, in *United States ex rel. Williams v. De Robertis,* 715 *F*.2d 1174, 1177–78 (7th Cir.1983), *cert. denied,* 464 *U.S.* 1072, 104 *S.Ct.* 982, 79 *L.Ed.*2d 219 (1984), the court set forth the supervisory rule it had prescribed in a previous case requiring that, before accepting a jury waiver, judges must explain to defendants "(1) that a jury is composed of twelve members of the community, (2) that the defendant may participate in the selection of jurors, (3) that the verdict of the jury must be unanimous, and (4) that if the defendant waives a jury trial, the judge alone will determine guilt or innocence." That supervisory rule, however, applied only to district judges in the Seventh Circuit. The case before the court arose from an Illinois state court conviction. No such supervisory rule had been adopted by the Illinois Supreme Court.

Therefore, applying constitutional principles, but not the Seventh Circuit's more demanding supervisory rule, the Court of Appeals upheld the validity of the defendant's jury waiver and denied habeas relief notwithstanding the defendant's unrebutted affidavit stating that he was unaware at the time of waiver that he could have participated in jury selection and that unanimity was required for a jury to convict. *Id.* at 1177. The court reasoned that to a layperson, the essential significance of the right to a jury trial is a choice of being judged by a group of people from the community or having the issue of guilt or innocence determined by a judge, and that the record was sufficient to establish the defendant's basic understanding of that choice. *Id.* at 1180. That is all that is required as a matter of constitutional law. *Ibid.*

Other circuits have declined to adopt such supervisory rules. *See, e.g., United States v. Sammons,* 918 *F*.2d 592, 597 (6th Cir.1990) (noting that, in a prior case, the Sixth Circuit had "specifically declined to join the Seventh Circuit in exercising [its]

---

procedure); *State v. Daniels,* 182 *N.J.* 80, 96–98, 861 *A.*2d 808 (2004) (prohibiting prosecutors from making accusations during summation that a testifying defendant tailored his or her testimony to that of other trial witnesses, having been allowed to be present during the entire trial).

supervisory powers on this issue."). The Sixth Circuit Court of Appeals expressed confidence that such a rule was unnecessary because it expected that district judges would conduct appropriate inquiry of defendants. *Ibid.* Nevertheless, the court held that, because the defendant in that case had signed a written jury waiver request form, the District Court judge's failure to engage in the suggested colloquy did not provide a basis for reversal and a habeas proceeding would be the appropriate forum in which the defendant could introduce evidence in an effort to show that his waiver was not made voluntarily, knowingly, or intelligently. *Ibid. See also United States v. Hunt,* 413 *F.*2d 983, 984 (4th Cir.1969) (same).

The Ninth Circuit has also declined to adopt a supervisory rule. *United States v. Cochran,* 770 *F.*2d 850, 851–53 (9th Cir.1985). In that case, the defendant had signed a written waiver request form, but there was no supplementary colloquy of any significance. *Id.* at 851. The Court of Appeals held that the failure of the district judge to conduct an appropriate colloquy with the defendant did not violate the constitution nor did it automatically require reversal. *Ibid.* The court therefore affirmed the defendant's conviction, commenting that

> [w]hen we affirm in failure-to-interrogate cases, we ordinarily do no more than hold that the unsupplemented record does not disclose a basis for reversal. We have previously said that facts outside the record may be introduced to show that the waiver was not made voluntarily, knowingly, or intelligently but that the proper vehicle for doing so is a habeas corpus proceeding.
>
> [*Id.* at 851–52 n. 1.]

The court concluded, therefore, that if the defendant wished to pursue his claim, he would have to do so by introducing facts outside the record in a habeas proceeding. *Ibid.* The court further noted that, notwithstanding the result it reached in that case, it implored judges to engage in appropriate colloquies before accepting a jury trial waiver in order to (1) more effectively ensure that the waiver is voluntary, knowing, and intelligent, (2) promote judicial economy by avoiding challenges to the validity of waivers on appeal or in habeas proceedings, and (3) emphasize to the

defendant the seriousness of his or her decision. *Id.* at 852. These are laudable purposes.

The Third Circuit has also chosen not to exercise its supervisory authority regarding jury waivers. *See United States v. Anderson,* 704 *F.*2d 117, 119 (3d Cir.) (declining to establish a supervisory rule), *cert. denied,* 464 *U.S.* 838, 104 *S.Ct.* 129, 78 *L.Ed.*2d 125 (1983); *United States v. Lilly,* 536 *F.*3d 190, 198 (3d Cir.2008) (entrusting to district judges the determination to fashion waiver colloquies in the way they see fit).

Returning to New Jersey jurisprudence, *Rule* 1:8–1(a) does not require "[c]onfirmatory verbalization of a defendant's written waiver[.]" *Jackson, supra,* 272 *N.J.Super.* at 550, 640 *A.*2d 863. Although our Supreme Court has clearly directed that, to be effective, a waiver must be made "voluntarily, knowingly, and competently," *Dunne, supra,* 124 *N.J.* at 317, 590 *A.*2d 1144 the Court has not had occasion to address the issue in a case, like this one, in which a waiver was granted at the defendant's request and the sole basis upon which the defendant then sought reversal was that the waiver was not voluntarily, knowingly, and competently entered. Indeed, as previously mentioned, three years after *Dunne,* a decision of this court let stand a murder conviction in a capital prosecution where there was a written waiver but no accompanying colloquy. *Jackson, supra,* 272 *N.J.Super.* at 553, 640 *A.*2d 863.

The New Jersey case law indicates that, putting aside the solemnity that accompanies a written waiver, an oral waiver affirmatively and personally made by a defendant in open court, which expresses substantially the same content as contained in the standard written form, is the functional equivalent of a written waiver. Thus, as long as it is established that a defendant understands the nature of the charges and of his or her right to be tried by a jury and affirmatively expresses his or her wish to waive that right, the waiver is effective.

With this in mind, I believe the disposition of this case should be guided by the reasoning of the federal cases I have discussed.

This leads to the conclusion that the unsupplemented record is sufficient to sustain defendant's waiver and affirm his conviction, leaving him the opportunity to further pursue the matter in a PCR proceeding.

I also agree with the reasoning in the federal cases that trial judges should in *all* cases in which a jury waiver is requested engage in colloquy with the defendant, which should include, at a minimum, the four fundamental points referred to above. Judges should insist on a signed written waiver form in *all* cases. Prosecutors should likewise be vigilant to assure that this requirement is satisfied.

To this end, I recommend that the Criminal Practice Committee consider the advisability of proposing the promulgation of an official jury waiver request form for statewide use, pursuant to *Rule* 1:8–1(a), to state substantially as follows:

The above-named defendant, charged with _____, has been advised of the nature of the charge(s) against him/her and of his/her right to trial by jury.

The defendant has further been advised that (1) a jury is composed of 12 members of the community, (2) a defendant may participate in the selection of jurors, (3) all 12 jurors must unanimously vote to convict in order for a conviction to be obtained, and (4) if a defendant waives a jury trial, a judge alone will decide his/her guilt or innocence.

Having been so advised, and having discussed with his/her attorney the advantages and disadvantages of a jury trial, the defendant hereby knowingly and voluntarily waives trial by jury and requests that he/she be tried by the court without a jury.

The Criminal Practice Committee may also consider the advisability of incorporating this change in *Rule* 1:8–1(a) itself or in the official comment to the Rule. It bears repeating that, whether such an official form is promulgated or whether any such amendments to the Rule are made, defendants should always be required to execute a written waiver, and sufficient colloquy, including at a minimum that which I have outlined, should be engaged in before a waiver is approved.

For the reasons I have stated, I would affirm defendant's conviction, without prejudice to his right to further pursue in a

PCR proceeding his contention that he was improperly denied his right to a trial by jury.

*Appendix*