796 A.2d 182

JAMES FLAGG, PLAINTIFF–APPELLANT, v. ESSEX COUNTY PROSECUTOR, DEFENDANT–RESPONDENT.

Argued November 5, 2001—Decided February 11, 2002.

562

564

*David M. Beckerman,* argued the cause for appellant, (*Beckerman & Beckerman,* attorneys).

*Barbara A. Rosenkrans,* Acting Assistant Prosecutor, argued the cause for respondent (*Donald C. Campolo,* Acting Essex County Prosecutor, attorney).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey, (*John J. Farmer, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a municipal worker whose job was forfeited based on illegal disposition of solid waste, a disorderly persons offense under the Solid Waste Management Act (Act), *N.J.S.A.* 13:1E–9.4. We are called on to establish the appropriate standard for determining whether the Attorney General or a county prosecutor has properly declined to seek a waiver of forfeiture of public employment pursuant to *N.J.S.A.* 2C:51–2 based on a conviction for a disorderly or petty disorderly persons offense. The trial court applied a "heightened standard of review" and held that the prosecutor's decision not to seek a waiver pursuant to *N.J.S.A.* 2C:51–2e was an "extraordinary abuse of discretion." The Appellate Division reversed, holding that the "patent and gross abuse of discretion" standard used for pretrial intervention matters should be applied and that that standard was not satisfied in this case. We hold that because the decision whether or not to seek a waiver does not involve law enforcement policy issues, that heightened standard is not required. Rather, the appropriate standard is simply abuse of discretion applied pursuant to written guidelines to assist in decision-making.

## I.

The facts of this case are not disputed. James Flagg was a twenty-nine year employee of the Department of Sanitation of the City of Newark, and worked as a dump truck driver on the day in question. On September 5, 1996 Flagg's truck broke down. His supervisor, Norman Dorch, accompanied him to the garage where he obtained another truck. Dorch then led Flagg to 162 Miller Street, where another driver was already present. Dorch instructed Flagg to "back up" the truck so they could load it with roofing materials, pieces of wood and caulk that were on the sidewalk and curb adjacent to an abandoned building. When the truck was loaded, Dorch instructed Flagg to follow him to King Street, approximately two blocks away. Upon arrival, Dorch directed Flagg to dump the contents of the truck on the street next to another load previously dumped there. Dorch indicated to Flagg that he would assume responsibility for the dumping. After following Dorch's instructions Flagg returned the dump truck to the garage and resumed his usual duties on his regular route.

Shortly thereafter, several Newark police officers confronted Flagg, Dorch and the other driver and transported them, first to the illegal dumping site and then to the police station. During an ensuing investigation by the Newark Illegal Dumping Task Force, Flagg admitted to dumping the second pile of debris on King Street, but insisted that he was ordered to do so by Dorch as his supervisor. When asked whether he thought dumping the debris on King Street was illegal, Flagg responded "[n]ot at the time, I was just following [Dorch's] orders."

Flagg was charged under the Act with collecting, transporting, and disposing of solid waste on a public street, in violation of *N.J.S.A.* 13:1E–9.3a and b. Under that Act, Flagg's alleged conduct constitutes a disorderly persons offense regardless of intent. *N.J.S.A.* 13:1E–9.4a. Although the charges against Flagg were filed by the Newark Illegal Dumping Task Force, the trial was conducted in the Maplewood Municipal Court. On May 13, 1998 Flagg was found guilty of violating the Act based on the illegal

disposition of solid waste. The statutory penalty for a first-time offender such as Flagg is a fine of not less than $2500, up to ninety days of community service, and suspension of driving privileges for between six months and one year. *N.J.S.A.* 13:1E–9.4b to c. Flagg was fined $5,000, his driver's license was suspended for six months, and he was required to perform five days of community service. He was again found guilty on June 11, 1999 in his *de novo* appeal to the Law Division and the same sanctions were reimposed. Flagg filed an appeal to the Appellate Division on July 20, 1999 that resulted in an affirmance in an unpublished opinion.

On September 6, 1996, one day after Flagg was charged as a disorderly person under the Act, the Newark Department of Sanitation filed formal disciplinary charges against him. The Department charged Flagg with conduct unbecoming a public employee and for violation of "Civil Service Law and Regulations" based on the pending alleged violation of the Act. The disciplinary charges were sustained following a hearing on September 20, 1996. Flagg's employment with the Newark Department of Sanitation was terminated on October 4, 1996 with retroactive effect to September 20, 1996. Flagg filed an appeal with the Merit System Board on October 16, 1996, and the matter was referred to the Office of Administrative Law (OAL). The OAL has postponed disposition of that appeal until after this Court's decision in this appeal.

On August 16, 1999, approximately one month after filing the appeal with the Appellate Division regarding the statutory violation, and while his employment termination appeal was pending before the Merit System Board, Flagg filed a complaint in lieu of prerogative writs, seeking to compel the Acting Essex County Prosecutor either to request a waiver of the job forfeiture mandate of *N.J.S.A.* 2C:51-2 or to explain his reasons for not seeking a waiver of forfeiture. At a hearing conducted in the Law Division on that complaint, Chief Assistant Prosecutor Siobhan A. Teare testified that the Prosecutor had decided not to seek a

waiver of the mandatory job forfeiture provision of *N.J.S.A.* 2C:51–2. Teare testified that the Acting Prosecutor found the following facts relevant to his decision: (1) Flagg was convicted of a strict liability offense, and therefore the legislative intent would be undermined by exempting Flagg from job forfeiture; and (2) Flagg, as a twenty-nine year veteran of the Sanitation Department, must have realized that his supervisor's request to dispose of solid waste in the middle of the street was illegal, particularly because his supervisor told him he would take responsibility if anything happened as a result of the dumping. Teare also testified that it was not the policy of the prosecutor to seek waivers of job forfeitures.

The trial court held that the prosecutor's decision not to request a waiver of forfeiture was "an extraordinary abuse of discretion" since Flagg had an unblemished record, had worked for the City for approximately thirty years, and, because the statute under which Flagg was convicted imposes strict liability, Flagg had no criminal intent. Accordingly, the trial court exempted Flagg from the job forfeiture requirements. The prosecutor appealed and the Appellate Division reversed in a published opinion. *Flagg v. Essex County Prosecutor,* 336 *N.J.Super.* 506, 512, 765 *A.*2d 278 (2001). The panel explained that the lower court failed to apply the patent and gross abuse of discretion standard. Although it might have viewed "Flagg's situation more sympathetically than did the Prosecutor, [it could not] state that the reasons not to waive the forfeiture provision were so wide of the mark as to require [its] intervention." *Ibid.* We granted Flagg's petition for certification, 167 *N.J.* 635, 772 *A.*2d 937 (2001), and now reverse.

## II.

Flagg contends that the prosecutor's refusal to seek a waiver from the Superior Court "constituted an absolute patent and gross abuse of discretion." He argues that the Appellate Division erred by reversing the trial court's application of the factors normally used to determine patent and gross abuse of discretion in pretrial

intervention cases (PTI). Flagg also asserts that he would have fared better if illegal dumping were an indictable offense, rather than a disorderly persons violation, because then the prosecutor's refusal of PTI clearly would have been a patent and gross abuse of discretion.

### A.

Flagg's disorderly persons conviction triggered the job forfeiture provision of *N.J.S.A.* 2C:51-2 because that conviction for improper disposition of solid waste touched upon his employment as a sanitation worker. Under that statute, "[a] person holding any ... employment ... under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if ... [h]e is convicted of an offense involving or touching such ... employment." *N.J.S.A.* 2C:51-2a(2). Although the statute might seem somewhat draconian, the Legislature created a "relief valve" in 1988 by adding subsection "e" to *N.J.S.A.* 2C:51-2, which states that "[a]ny forfeiture or disqualification ... which is based upon a conviction of a disorderly persons or petty disorderly persons offense may be waived by the court upon application of the county prosecutor or the Attorney General and for good cause shown." *N.J.S.A.* 2C:51-2e. The intended purpose of that subsection was to "ameliorate [the] harshness" of the forfeiture provision in practical application. Senate Judiciary Committee, *Statement to Assembly Bill No. 4479*, at 1 (Dec. 17, 1987). The Governor stated that, "requiring mandatory forfeiture of and permanent disqualification from public office may, under some circumstances, be too harsh a sanction for a minor infraction of our laws." *Moore v. Youth Corr. Inst.*, 119 *N.J.* 256, 268, 574 *A.*2d 983 (1990) (quoting Governor Kean's Letter to the General Assembly (Jan. 11, 1988)).

### B.

First, we decide what standard should be adopted to review the Attorney General's or a county prosecutor's decision

not to seek a waiver of the forfeiture and disqualification require-
ments. It is beyond dispute that the decision whether to seek
waiver pursuant to *N.J.S.A.* 2C:51–2e is discretionary, and judicial
review of that decision must be conducted in accordance with a
state-wide standard that is uniformly applied by all twenty-one
county prosecutors and by the Attorney General as well. Since
this is a case of first impression, we have not yet adopted a
standard. The Acting Essex County Prosecutor and the Attorney
General urge the Court to adopt the "patent and gross abuse of
discretion" standard used in PTI cases. In *State v. Lazarchick,*
314 *N.J.Super.* 500, 530–33, 715 *A.*2d 365 (App.Div.), *certif. denied,*
157 *N.J.* 546, 724 *A.*2d 804 (1998), the Appellate Division adopted
that standard and rejected the defendant's request to establish an
ordinary abuse of discretion standard. In doing so, the court
reasoned that "forfeiture of office or employment is not an aspect
of the sentence to be imposed for the offenses," but is instead " 'a
collateral consequence' of conviction." *Id.* at 530–31, 715 *A.*2d 365
(quoting *State v. Heitzman,* 209 *N.J.Super.* 617, 622, 508 *A.*2d
1161 (App.Div.1986), *aff'd,* 107 *N.J.* 603, 527 *A.*2d 439 (1987)). The
court acknowledged that judicial review of prosecutorial discretion
in sentence-related determinations is based on a standard "charac-
terized by a limited arbitrariness." *Id.* at 533, 715 *A.*2d 365. The
panel concluded that the forfeiture and disqualification provisions
are less clearly related to

> traditional judicial powers such as sentencing, and more clearly akin to other
> governmental exercises involving law enforcement (executive branch) prerogatives,
> such as determining eligibility for pre-trial intervention ... calling for enhanced
> deference to prosecutorial decision-making and judicial review based on a "patent
> and gross abuse of ... discretion" standard.
>
> *[Ibid.* (citations omitted).]

We disapprove of the standard adopted in *Lazarchick.*

■ The forfeiture and disqualification requirements are non-
penal consequences of certain convictions. *N.J.S.A.* 2C:51–2e
fairly can be characterized as remedial, both in its purpose and
implementing provisions. Although the authority to seek waiver
is vested in the Attorney General and county prosecutors, we are
convinced that the Legislature did not intend the discretion to

seek waiver to be subject to more limited review simply because it is to be exercised by law enforcement officials. Given that the discretionary decision whether or not to seek a waiver is dissimilar to those determinations typically made by prosecutors in their law enforcement capacity, and is more akin to prosecutorial discretion in sentencing-related determinations, an abuse of discretion would be the more appropriate standard. In PTI matters, the focus is on whether there should be prosecution under an indictment, thereby implicating a wide range of considerations that influence a prosecutor's ultimate decision. *State v. Wallace*, 146 *N.J.* 576, 582, 684 *A.*2d 1355 (1996). In contrast, the purpose of *N.J.S.A.* 2C:51–2e is to avoid the harshness of forfeiture and disqualification for a few minor offenses in which the circumstances dictate otherwise. Because that statute is remedial legislation, it should be liberally applied to achieve the legislative intent. That purpose can be achieved more effectively under an ordinary abuse of discretion standard.

■ Although the ordinary "abuse of discretion" standard defies precise definition, it arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Achacoso–Sanchez v. Immigration and Naturalization Service*, 779 *F.*2d 1260, 1265 (7th Cir.1985). In other words, a functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue. It may be "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Coletti v. Cudd Pressure Control*, 165 *F.*3d 767, 777 (10th Cir.1999) (internal quotations and citation omitted). "Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." *State v. Baynes*, 148 *N.J.* 434, 444, 690 *A.*2d 594 (1997) (quoting *State v. Bender*, 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979)).

In contrast, a "patent and gross abuse of discretion' is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that 'has gone so wide of the mark sought to be accomplished . . . that fundamental fairness and justice require judicial intervention.' " *State v. Wallace, supra,* 146 *N.J.* at 582–83, 684 *A.*2d 1355 (quoting *State v. Ridgway,* 208 *N.J.Super.* 118, 130, 504 *A.*2d 1241 (Law Div.1985) (internal quotations and citation omitted)). Patent and gross abuse of discretion by a prosecutor, as applied to PTI, is established by showing that the prosecutor's rejection was premised upon consideration of less than all relevant factors, or that the decision was based on consideration of irrelevant or inappropriate factors that amounted to clear error in judgment thereby subverting the goals underlying pretrial intervention. *State v. Caliguiri,* 158 *N.J.* 28, 37, 726 *A.*2d 912 (1999); *State v. Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217; *State v. Hoffman,* 224 *N.J.Super.* 149, 155, 539 *A.*2d 1254 (App.Div.1988); *State v. Burger,* 222 *N.J.Super.* 336, 341, 536 *A.*2d 1295 (App.Div. 1988).

Unlike PTI matters, forfeiture of future public employment is not a typical prosecutorial decision but rather a consequence of certain convictions. Therefore, applying the heightened-deferential standard of patent and gross abuse of discretion is unnecessary and inappropriate.

C.

Second, we consider whether the Acting Prosecutor's decision not to seek a waiver on Flagg's behalf constituted an abuse of discretion. As we noted earlier in this opinion, the trial court found there was an extraordinary abuse of discretion. In reaching that conclusion, the court observed that Flagg: (1) was convicted of a non-intent crime; (2) was following orders when he dumped the debris on King Street; (3) had never been arrested or charged with a crime; and (4) had not been disciplined in all the years that he worked for the Newark Department of Sanitation. Based on those factors, the court concluded that, even applying an enhanced

standard of deference, the Acting Prosecutor's decision not to seek a waiver was an extraordinary abuse of discretion.

■ At the waiver hearing, however, Chief Assistant Prosecutor Teare testified that it is Acting Prosecutor Campolo's policy not to seek waiver of the job forfeiture and disqualification requirements contained in *N.J.S.A.* 2C:51–2 under any circumstances. That policy was implemented in the only two cases in which the Acting Prosecutor was asked to seek a waiver from the court. Flagg argues that such a *per se* rule of not seeking waiver for a disorderly persons offense based on strict liability establishes a manifest abuse of discretion. We agree.

This Court reached a similar conclusion in *State v. Baynes,* 148 *N.J.* 434, 690 *A.*2d 594 (1997). In that PTI case, it was the Monmouth County Prosecutor's stated policy not to seek PTI in cases in which the defendant had been charged with possession of a controlled dangerous substance within 1,000 feet of a school zone. *Id.* at 438–39, 690 *A.*2d 594. The Court held that the Monmouth County Prosecutor's policy constituted a patent and gross abuse of discretion because *per se* rules, by their very nature, "require prosecutors to disregard relevant factors." *Id.* at 445, 690 *A.*2d 594. The Court further concluded that the prosecutor's policy amounted to a clear error in judgment because it was "contrary to the predominate views of others responsible for the administration of justice." *Id.* at 448, 690 *A.*2d 594.

The *per se* rule denounced in *Baynes* that applied the higher PTI standard applies with equal, if not greater, force in this case under the lower abuse of discretion standard. The Acting Prosecutor's *per se* rule of not applying for a waiver undermines the intent of the statute's waiver provision that was not permitted prior to 1988. *See L.* 1987, *c.* 427, § 1, effective January 14, 1988. As we noted in *Moore, supra,* 119 *N.J.* at 267, 574 *A.*2d 983:

In its statements to Assembly No. 4479, dated December 17, 1987, the Senate Judiciary Committee explained that it wished to amend *N.J.S.A.* 2C:51–2 to provide exceptions to forfeiture when the crime did not merit the punishment:

> This bill attempts to ameliorate the harshness of 2C:51–2 as it applies to persons convicted of disorderly or petty disorderly persons offenses. The bill provides that while forfeitures and disqualifications would still apply in all cases, the sentencing court, upon application of the municipal or county prosecutor or Attorney General and for good cause, would have the discretion to waive these disabilities in any case where the underlying offense was a disorderly or petty disorderly persons offense. Under the bill, any person convicted of a disorderly or petty disorderly persons offense within the one year preceding this act may have an application made on their behalf to the sentencing court to waive any disqualification which may have resulted from their conviction.

Governor Thomas Kean vetoed the bill and returned it to the General Assembly with his comments. Specifically, Governor Kean objected to municipal prosecutors being given the power to seek exceptions to the statute:

> The legislation, in its original form was carefully drafted to ensure that the waiver provision would be utilized only in the extraordinary case where necessary to remedy an obvious inequity caused by the present requirement of mandatory forfeiture for even the most minor offense. Consequently, only the Attorney General and the 21 county prosecutors—the highest ranking law enforcement officers at the State and county levels, respectively—were given the authority to request these waivers.... The power to request a waiver of mandatory forfeiture must be carefully circumscribed if it is to be wielded in a uniform and equitable manner.
>
> [*Ibid.*]

It is clear from Governor Kean's letter and the Senate's statement that the intent of the waiver provision was to ameliorate the harshness of the job forfeiture requirement in cases where forfeiture and disqualification, as collateral consequences flowing from convictions for the most minor offenses, would be too severe. Clearly, disorderly and petty disorderly persons offenses are minor offenses. *See N.J.S.A.* 2C:1–4. The remedial and beneficent purpose of *N.J.S.A.* 2C:51–2e can be effectuated only if each waiver application, in light of its surrounding facts, is reviewed by the prosecutor on a case-by-case basis. When it is a prosecutor's stated policy not to seek a waiver under any circumstances, then the statute's goal cannot be achieved because the decision has been made *before* the public employee makes a request for a waiver. In addition, a *per se* rule precludes a prosecutor from considering relevant factors.

■ Even if we accepted the prosecutor's argument that the record supports a finding that two reasons were given for not

pursuing a waiver—that Flagg was convicted under a non-intent statute and that he must have known that dumping solid waste on a public street was illegal—the prosecutor still violated the standard that we establish today. With respect to the first reason, Teare testified:

> [T]hough it appears that Mr. Flagg had no intent in violating this statute, this is a non-intent work—a non-intent statute. Thus, what his intent was had nothing to do with it.
>
> . . . .
>
> Since it is a strict liability statute, it is the same as there are individuals in our office that are currently getting prosecuted because their bosses had ordered them to do something illegal. You cannot order someone to do something illegal.

Teare was probably alluding to the fact that Flagg has consistently maintained that the only reason he emptied his dump truck on King Street was because his immediate supervisor ordered him to do so. The Appellate Division also emphasized the fact that illegal dumping is a strict liability offense: "Flagg should not be permitted to circumvent the legislative goal that anyone, who illegally dumps garbage, suffers the full consequences of his wrongdoing, *regardless of intent.*" *Flagg, supra,* 336 *N.J.Super.* at 512, 765 *A.*2d 278 (emphasis added).

■ That reasoning suffers from two flaws. First, applying for a waiver of forfeiture and disqualification requirements would not, as the Appellate Division believed, allow Flagg to "circumvent the legislative goal that anyone, who illegally dumps garbage, [should] suffer[ ] the full consequences of his wrongdoing." *Ibid.* As a result of his conviction, Flagg was sentenced to five days of community service, ordered to pay $5,000 in fines and required to forfeit his driver's license for six months. Thus, he suffered the full penal consequences of his actions. Forfeiture and disqualification are not penal consequences; rather, they are collateral consequences. Furthermore, it defies logic to argue that Flagg is not entitled to a waiver because he was convicted under a strict liability statute. If anything, the fact that Flagg was convicted of a strict-liability offense would seem to militate in favor of leniency. He never intended to harm anyone or any property. Indeed, it is

difficult to think of a candidate more deserving of a waiver than Flagg.

The second explanation given by Teare in support of Acting Prosecutor Campolo's decision to decline Flagg's application, namely, that Flagg must have known that his actions were illegal, is slightly more relevant, but nonetheless cannot serve as a basis for refusing to seek a waiver. Flagg has never directly admitted to knowing that emptying his truck on King Street was illegal. To the contrary, Flagg testified that "I never gave it a thought, because I was following orders of my supervisor, and it never dawned on me that I was doing anything wrong." That statement notwithstanding, there is circumstantial evidence from which it may be inferred that Flagg knew something was amiss. Nonetheless, it is undisputed that the only reason Flagg emptied his dump truck on King Street was because he was ordered to do so by Dorch, his immediate supervisor. Although that was not a valid defense to the charges of illegal dumping under the strict liability statute, it is an extremely relevant factor to be considered in determining whether to waive the job forfeiture requirement because it reflects directly on Flagg's degree of moral culpability, or, in this case, the lack thereof. Furthermore, the roofing materials, pieces of wood and caulk that were dumped in the street cannot be classified as hazardous chemicals or substances or air contaminants. See N.J.S.A. 13:1E–38b to –38c. There is nothing in the record to suggest that the debris posed an immediate threat to public health, safety or the environment.

Equally compelling is the fact that Flagg was convicted of an offense for which the Legislature determined that the imposition of a fine sufficiently satisfied the penal objective for this minor infraction of our laws without vesting a sentencing court with the authority to impose as much as one day of incarceration. In contrast, a disorderly persons offense under the New Jersey Code of Criminal Justice (Code) authorizes a term of imprisonment up to six months. N.J.S.A. 2C:43–8. Furthermore, not a single aggravating factor listed in N.J S.A. 2C:44–1a is applicable. In

contrast, ten of thirteen enumerated mitigating factors are applicable:

1) his conduct neither caused nor threatened serious harm;

2) he did not contemplate that his conduct would cause or threaten serious harm;

3) he acted under a strong provocation in that his supervisor ordered him to dump the debris in the street;

4) there were substantial grounds tending to excuse or justify his conduct, though failing to establish a defense;

5) he will participate in a program of community service;

6) he has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the present offense;

7) his conduct was the result of circumstances unlikely to recur;

8) his character and attitude indicate that he is unlikely to commit another offense;

9) he is particularly likely to respond affirmatively to probationary treatment;

10) he has cooperated with law enforcement authorities.

*[N.J.S.A. 2C:44–1b.]*

Under the facts and circumstances presented, refusing to seek a waiver because Flagg must have known the dumping was illegal was an abuse of discretion.

Accordingly, we agree with the trial court that good cause exists in this case to waive the forfeiture and disqualification requirements. Because forfeiture of employment is not warranted based on *N.J.S.A.* 2C:51–2e, it follows that termination of Flagg's employment in the disciplinary proceedings based on the same matrix of facts would constitute an injustice.[1] Law should not become an instrument of injustice. *LaFage v. Jani,* 166 *N.J.* 412, 431, 766 *A.*2d 1066 (2001) (quoting *Procanik by Procanik v. Cillo,* 97 *N.J* . 339, 351, 478 *A.*2d 755 (1984)). Such draconian discipline all but

---

[1] The Acting Prosecutor filed a motion to supplement the record and attached some documentary evidence showing that Flagg has been disciplined several times over the years. Those matters involved discipline for (1) failing to report to work on Monday, September 25, 1972, (2) failing to report to work on Tuesday, April 9, 1974, and (3) operating City owned equipment or a motor vehicle negligently on May 24, 1989. The maximum sanction imposed was a three-day suspension for the April 9, 1974 episode. That information was not placed before the trial court or the Appellate Division.

renders illusory the salutary results intended to be achieved by the waiver statute.

### D.

■ Finally, we consider whether guidelines are needed to assist in making the decision whether to seek waiver. Because forfeiture of employment and future disqualification are such severe non-penal consequences, this Court "cannot sanction a decisional process which might yield *ad hoc* or arbitrary determinations." *State v. Leonardis,* 71 *N.J.* 85, 121, 363 *A.*2d 321 (1976). To safeguard against such abuses, we require the Attorney General to promulgate written guidelines for determining whether to seek a waiver of the forfeiture and disqualification requirements. In addition to the guidelines, the Attorney General and county prosecutors shall furnish written statements of the reasons for declining to seek waivers. The guidelines and statement of reasons will help to alleviate any suspicion about the arbitrariness of the decisional process while assisting in judicial review. "Without standards the prosecutorial decision-making process [would be] unguided." *State v. Lagares,* 127 *N.J.* 20, 31, 601 *A.*2d 698 (1992).

The Attorney General requested appearance as *amicus curiae* so that he could "assist in the development of prosecutorial guidelines and judicial review standards when a public employee convicted of a disorderly or petty disorderly persons offense involving dishonesty or touching upon the office seeks waiver of mandatory forfeiture of public office pursuant to *N.J.S.A.* 2C:51–2e." With that goal in mind, the Attorney General suggests that a framework be implemented to "eliminate unbridled discretion and promote state-wide uniformity in waiver of forfeiture of office decisions." We agree with the approach proposed by the Attorney General.

■ First, the public employee should bear the burden of proof to show that his or her request of the Attorney General or a county prosecutor to seek a waiver from the sentencing court is supported by mitigating circumstances warranting a waiver. Sec-

ond, although the following sixteen factors may be modified by the Attorney General from time to time as deemed appropriate, they should be considered by the Attorney General and the various county prosecutors in deciding whether to seek a waiver, and by the sentencing and the reviewing courts in performing their judicial reviews.[2] Those factors are:

1) the totality of the circumstances surrounding the event;

2) the nature of the offense, including its gravity and substantiality, whether it was a single or multiple offense and whether it was continuing or isolated;

3) the quality of moral turpitude or the degree of guilt or culpability, including the employee's motives, reasons and personal gain;

4) the duties of the employee;

5) the relationship between the offense and the duties of the employee, including but not limited to, whether the criminal activity took place during work hours, or involved work facilities or equipment;

6) the employee's public employee history and record;

7) the employee's length of service;

8) whether forfeiture will be an undue hardship upon the employee and his family;

9) the employer's desires;

10) the needs and interests of the victim and society;

11) the extent to which the employee's offense constitutes part of a continuing pattern of anti-social behavior;

12) the employee's prior record of convictions and disciplinary infractions;

13) the threat presented to coworkers or the public if the employee is permitted to retain his or her position;

14) any involvement of the employee with organized crime;

15) whether the employee has been granted waiver on a prior occasion; and

16) the impact of waiver on the employment status of codefendants.

We believe, as does the Attorney General, that guidelines will provide a means for the Attorney General and county prosecutors to avoid arbitrary or abusive exercises of their discretionary power. The guidelines should be adopted as soon as practicable.

---

[2] The first nine factors are borrowed from the statutory guidelines used to determine forfeiture of retirement benefits for misconduct occurring during public service. *N.J.S.A.* 43:1–3c. The last seven factors are borrowed from guidelines used to determine whether a defendant is eligible for pretrial intervention. *N.J.S.A.* 2C:43–12e.

Viewing the foregoing factors under an abuse of discretion standard, the facts of this case require us to conclude that the Acting Prosecutor's refusal to seek a waiver constituted an abuse of discretion.

### III.

The judgment of the Appellate Division is reversed and the judgment of the trial court precluding forfeiture and disqualification is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.