**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3276-18T4

STATE OF NEW JERSEY,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

ISAAC WOOD, III,

       Defendant-Respondent/
       Cross-Appellant.

_____

Submitted October 10, 2019 – Decided September 15, 2020

Before Judges Fuentes, Haas, and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Municipal Appeal No. 2018-09.

Angelo J. Onofri, Mercer County Prosecutor, attorney for appellant (Laura Sunyak, Assistant Prosecutor, of counsel and on the briefs).

Furlong and Krasny, attorneys for respondent (Scott A. Krasny, on the brief).

PER CURIAM

At all times relevant to this case, defendant Isaac Wood, III, was a Senior Corrections Officer at the Mercer County Corrections Facility (MCCC). On March 29, 2017, a Mercer County Grand Jury indicted defendant on two counts of second degree official misconduct, N.J.S.A. 2C:30-2a, and one count of third degree tampering with public records or information contrary to N.J.S.A. 2C:28-7a(1). The indictment also charged Corrections Officer Trachell Syphax, defendant's then fiancé and now his wife, with two counts of second degree official misconduct, N.J.S.A. 2C:30-2a and N.J.S.A. 2C:30-2b, and one count of third degree tampering with public records or information, N.J.S.A. 2C:28-7a(1).

These charges arose from an altercation involving defendant and Syphax, in their capacity as correction officers, against Rafael Jardines, an inmate at the MCCC. On February 20, 2018, the State dismissed the indictment and issued a summons-complaint charging defendant with simple assault, N.J.S.A. 2C:12-1a(1), a disorderly persons offense.[1] The State did not file any charges against

---

[1] The State conceded that it commenced the prosecution of the simple assault charges beyond the one-year limitation period codified in N.J.S.A. 2C:1-6b(2). Conversely, defendant, while represented by counsel, waived the statute of limitations as a defense to this charge.

Syphax. The simple assault charge against defendant was thereafter referred for trial before the Hopewell Township Municipal Court.

In a trial conducted on March 27, 2018, the Hopewell Township Municipal Court found defendant guilty of simple assault against Jardines. The Mercer County Prosecutor's Office (MCPO) apprised the municipal court judge that at the time of sentencing, the State would seek a judgment of forfeiture of defendant's public position as a corrections officer pursuant to N.J.S.A. 2C:51-2(a)(2). This judgment would also permanently disqualify defendant from obtaining any future public employment.

On May 1, 2018, the municipal court judge sentenced defendant to pay a $1,000 fine, and mandatory costs and penalties. The municipal court judge also granted the State's application for a judgment of forfeiture of defendant's public position as a corrections officer. In reaching this decision, the municipal court judge applied the forfeiture factors outlined by the Supreme Court in Flagg v. Essex County Prosecutor, 171 N.J. 561, 579 (2002). Defendant appealed the municipal court's decision to the Law Division.

Pursuant to Rule 3:23-8(a)(2), the Law Division judge conducted a de novo review of the record developed before the municipal court and found defendant guilty of simple assault. The trial judge sentenced defendant to pay

the same fine and penalties imposed by the municipal court. However, the Law Division judge reexamined the Flagg factors and concluded "that an overwhelming majority of factors . . . weigh in favor of waiver." The judge found the State's decision to seek the forfeiture of defendant's public office under these circumstances constituted an abuse of discretion.

The State now appeals the Law Division's order denying its motion seeking the forfeiture of defendant's public position as a corrections officer. Defendant cross-appeals the Law Division's decision that found him guilty of simple assault against Jardines. After reviewing the record presented to the Law Division as well as the factors established by the Supreme Court in Flagg, we conclude the Law Division judge mistakenly exercised his discretionary authority when he denied the State's application for a judgment of forfeiture of defendant's position as a corrections officer. In response to defendant's cross-appeal, we affirm the conviction for simple assault.

I.

The State's sole witness was Phyllis Oliver who, at all times relevant to this case, was employed by Mercer County Department of Corrections as a lieutenant and Deputy Warden at the MCCC. As Deputy Warden, Oliver is "responsible for the Internal Affairs Department [and] . . . all the investigation[s]

4

involving any allegations of misconduct with the officers." She testified that all corrections officers are "required to go through bi-annual use of force training." This includes both use of force and firearm training. Through Oliver's testimony, the State presented documentary evidence that showed defendant received this training on April 30, 2016, as well as the Attorney General's guidelines on use of force by law enforcement officers, known as standard operating procedure (SOP) 935.

At the prosecutor's request, Oliver read into the record the relevant sections of SOP 935:

> Physical contact which means routine or procedural contact with an individual that is necessary to effectively accomplish a legitimate law enforcement objective. Examples of physical force would include, but not limited to, holding an arm of an individual, during escort. Handcuffing an individual. Maneuvering or securing an individual for a search or guiding an individual into a vehicle.

SOP 935 also cautioned that staff members, including corrections officers, should use the minimum physical force possible when necessary to control an individual. Such force must be objectively reasonable under the circumstances and consistent with the facility's procedures.

The Law Division judge found that on May 11, 2016, inmate Jardines was housed in cell number four of the Medical Unit and placed "on suicide watch

after having been transported from Trenton Psychiatric Hospital." Because Jardines required one-on-one suicide surveillance, a corrections officer was stationed outside his cell twenty-four hours a day. Officer Bethea[2] was assigned to conduct the one-on-one suicide watch of Jardines; Officer Syphax, was assigned to periodically relieve Bethea.

The DVD security footage from May 11, 2016 includes three clips showing the interactions between Officer Bethea, Officer Syphax, defendant, and Jardines. The third clip depicts the evidence relied on by the State to prosecute defendant on the charge of simple assault. The Law Division judge provided the following description of this video evidence:

> The first clip shows . . . defendant come up to Officer [Syphax] and Officer Bethea talking outside of Jardine's cell before Officer Bethea and . . . defendant entered the room.
>
> The second clip utilizes a split screen to depict two different camera angles filming at the same time. It also shows the victim, Jardine[s], wearing a torn suicide gown and which shows Officer [Syphax] having relieved Officer Bethea. This also shows . . . defendant walking down the hallway carrying what appears to be a suicide gown. He then removes the victim from his cell, takes him to a physical therapy room to change the suicide gown and then brings him back to his cell.

---

[2] The appellate record does not disclose Officer Bethea's first name.

The third video also shows the victim sitting in his cell on the toilet wherein [Jardines] takes a [S]tyrofoam cup and uses it to throw some stuff -- some substance under the door toward Officer [Syphax]'s feet. This depicts… defendant walking down the hallway to the victim's cell which he immediately unlocks the door, enters the room without hesitation and hits the victim forcing him to the floor. He then kicks the inmate in the body and groin area, at which time Officer [Syphax] calls a code 6 and other officers come for assistance.

The Law Division judge found the incident report reviewed by Deputy Warden Oliver indicates that Officer Syphax yelled out: "he threw piss on me," presumably referring to Jardines. As part of the Internal Affairs investigation, Oliver also reviewed the DVD recording of this incident. The Law Division judge accepted the following description of the incident provided by Deputy Warden Oliver:

> According to the testimony of former Deputy Warden Oliver who was the internal affairs investigator at the correctional center, following a review of the DVD of the medical unit it showed the inmate taking a substance from the toilet and throwing it under the door . . . Deputy Warden did not know whether the thrown substance was toilet water, urine or excrement.

Defendant testified that when he heard his fiancé "yelling, upset" that Jardines had thrown "piss" on her, he responded to Jardines's cell with the intent to handcuff him and take him off the unit. According to defendant, before he reached Jardines's cell, the inmate was defiant and would not follow Officer

7

Syphax's orders.  When he arrived at the cell, Jardines was standing at the wall with the Styrofoam cup in his hand.   In the course of his direct testimony, defendant described his understanding of the significance of Jardines's medical slip:

> Q. Are you familiar . . . on May 11th, 2016 a medical slip or a form for Jardines?
>
> A. Yes, there was one on the door.
>
> Q. Okay. And what's the purpose of that as you understand it?
>
> A. So, you can know what they can have and what they can' t have and sort of they status.
>
> Q. And what were you aware of in terms of whether an Inmate Jardines [sic] could or could not have on May 11th?
>
> A. I was aware of -- basically, he could have nothing but his soup.  He couldn't have no sharps, couldn't have no utensils, couldn't have no blanket, no sheets, towels.

At the time of this incident with Jardines, defendant had been employed as a corrections officer at the MCCC for more than twenty years. His duties included conducting security checks of inmates held in the Medical Department. While sitting at a desk located in the waiting area of the Medical Department, he viewed the four video monitors showing the inside of the four cells housing medically fragile inmates.

In response to his attorney's questions, defendant testified that when he entered Jardines's cell, he immediately yelled: "Get in back of the cell. Put the cup down" ten different times. According to defendant, Jardines did not comply and turned away with the cup. Defendant testified that when "[Jardines] leaned back with the cup," he characterized Jardines's demeanor as aggressive and thought: "he's going to toss something on me."

Deputy Warden Oliver testified she did not see any evidence that Jardines was being aggressive or resisting when defendant entered his cell. She testified that a corrections officer may infer an inmate is being aggressive when there is evidence that he or she "is coming at you, make[s] gestures at you . . . . The record shows the initial standoff between defendant and Jardines transpired over a two-second time frame. Defendant claimed he did not intend to strike or hit Jardines when he attempted to slap the cup out of the inmate's hand. When Jardines fell to the floor, defendant testified that he ordered him to "lay flat" and "let me see your hands"; defendant alleged that Jardines remained defiant and told him: "fuck you."

It was at this point that defendant's conduct crossed the line separating accepted attempts to control the situation and criminal assault. The following testimony elicited by defense counsel on direct examination illustrates the point:

9                                                                A-3276-18T4

Q. Tell me again how you're giving him those commands? What voice were you using?

A. "Lay flat on the ground. Let me see your hands. Let me see your hands."

Q. And did he do that?

A. No.

Q. What did you do next?

A. I kicked him in the mid-section.

Q. Why?

A. To let him know I wasn't playing. I wanted him to do what I wanted him to do.

Based on this evidence, the Law Division judge made the following findings:

> This court finds similarly to the lower court. [D]efendant's purpose was not just to handcuff the victim but, rather, was an attempt to cause him harm. The video clip 3 is clear and that the defendant well -- went well beyond any reasonable force required to subdue and handcuff the victim. Furthermore, that clip also confirms that within seconds of . . . defendant entering his cell, striking the victim -- victim and then kicking him three times he was assisted by three other officers who quickly were able to handcuff the victim, put him in a suicide garb and transport him out of the unit.
>
> The court finds that there was no justification for … the defendant's actions and finds beyond a reasonable

10

doubt that this defendant attempted to cause bodily injury to this victim and that his actions were purposeful.

II.

Because defendant's cross-appeal is predicated on the threshold question of culpability, we begin our legal analysis by addressing the following arguments:

> DEFENDANT'S CONVICTION FOR AN ATTEMPT TO CAUSE BODILY INJURY PURSUANT TO N.J.S.A. 2C:12-1 MUST BE REVERSED
>
> WOOD'S USE OF FORCE AGAINST THE INMATE WAS JUSTIFIED AND HIS CONVICTION PURSUANT TO N.J.S.A. 2C:12-1 MUST BE REVERSED.

We reject these arguments and affirm defendant's conviction. Pursuant to N.J.S.A. 2C:12-1(a)(1), a person is guilty of simple assault if he or she: "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:11-1(a) defines "bodily injury" as "physical pain, illness or any impairment of physical condition." Here, the record we have described amply supports the Law Division's factual findings and conclusions of law. Defendant's arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

11

We next address the State's direct appeal that seeks the reversal of the Law Division's order denying its application for a judgment of forfeiture of defendant's position as a Mercer County Corrections Officer. We start by stating the relevant statutory standard:

> A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office, position or employment if:
>
> . . . .
>
> (2) He is convicted of an offense involving or touching such office, position or employment;
>
> . . . .
>
> As used in this subsection, "involving or touching such office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.
>
> [N.J.S.A. 2C:51-2(a) (emphasis added)]

In Moore v. Youth Corr. Inst., 119 N.J. 256, 266 (1990), the Supreme Court cited with approval our decision in State v. Pitman, 201 N.J. Super. 21, 26 (App. Div. 1985), in which we held that a correction officer's conviction of simple assault on an inmate touched and concerned his office as a public employee. The Court in Moore stated that such a conviction has "an obvious

connection to employment" that [should] alert the trial court and the perpetrator that forfeiture would follow from [such] a conviction." 201 N.J. Super. at 26.

The prosecutor's decision to seek the forfeiture of defendant's public position as a corrections officer under these circumstances is subject to judicial review under an abuse of discretion standard. As the Court acknowledged in Flagg, although this standard "defies precise definition," a reviewing court will reverse a trial court's decision that is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." 171 N.J. at 571 (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir.1985)). The Court in Flagg also held that "an abuse of discretion will be manifest if [a] defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Ibid. (quoting State v. Baynes, 148 N.J. 434, 444 (1997)).

The Flagg Court adopted sixteen factors the prosecutor must consider to determine whether to waive the forfeiture of defendant's public employment. 171 N.J. at 579. A court reviewing the prosecutor's decision must apply these same factors to determine whether the decision to enforce the forfeiture statute

13                                                                                           A-3276-18T4

in this case constituted an abuse of the prosecutor's discretionary authority.

These factors are:

> 1) the totality of the circumstances surrounding the event; 2) the nature of the offense, including its gravity and substantiality, whether it was a single or multiple offense and whether it was continuing or isolated; 3) the quality of moral turpitude or the degree of guilt or culpability, including the employee's motives, reasons and personal gain; 4) the duties of the employee; 5) the relationship between the offense and the duties of the employee, including but not limited to, whether the criminal activity took place during work hours, or involved work facilities or equipment; 6) the employee's public employee history and record; 7) the employee's length of service; 8) whether forfeiture will be an undue hardship upon the employee and his family; 9) the employer's desires; 10) the needs and interests of the victim and society; 11) the extent to which the employee's offense constitutes part of a continuing pattern of anti-social behavior; 12) the employee's prior record of convictions and disciplinary infractions; 13) the threat presented to coworkers or the public if the employee is permitted to retain his or her position; 14) any involvement of the employee with organized crime; 15) whether the employee has been granted waiver on a prior occasion; and 16) the impact of waiver on the employment status of codefendants.
>
> [(Ibid.) (emphasis added)]

The Court in Flagg expressly acknowledged the Attorney General's authority to modify these factors from time to time. Ibid. The Attorney General Guidelines currently in effect for deciding whether to apply for a waiver of

forfeiture of public office pursuant to N.J.S.A. 2C:51-2(e) (Guidelines) changed Flagg Factor 6 and Factor 8. Specifically, the Attorney General Guidelines now provide that a prosecutor shall consider:

> 15. Whether waiver of forfeiture of office would undermine public confidence in the integrity of important governmental functions, including but not limited to law enforcement functions; and

> 16. Nature and scope of cooperation with the prosecuting authorities.[3]

In its letter in lieu of a formal brief submitted to the municipal court and the Law Division, the MCPO addressed each of the factors promulgated by the Attorney General and argued that, based on the facts of this case, forfeiture was axiomatic. The prosecutor emphasized: "There is simply no aspect of . . . defendant's criminal conduct that was not directly and completely related to his position as a corrections officer." The record shows, however, that instead of considering whether the State abused its discretionary authority, the Law Division judge substituted his judgment to conclude defendant was entitled to a waiver of forfeiture. The following statement made by the Law Division judge in support of his decision the illustrates the point:

---

[3] https://www.state.nj.us/lps/dcj/agguide/waiverofforfeiture.pdf (Last visited on September 3, 2020).

Here, the state argued that any waiver would send a loud and clear message to the public that excessive force by law enforcement is not considered a serious infraction.

While . . . this court does not disagree with that, the court notes that this defendant was found guilty of simple assault, which is not deemed a "serious infraction," and in fact this is one of only two convictions where a waiver may be obtained. Further, . . . defendant suffered significant financial impact as a result of what is now in excess of 2-1/2 years of suspension without pay. This weighs in favor of the waiver, the nature and scope of cooperation with the . . . prosecuting authorities.

Here, both the state and the defendant are consistent that the prosecution did not seek cooperation from this defendant, again, which weighs in favor of a waiver. Upon an overall balancing of the above factor this court concludes that an overwhelming majority of factors . . . weigh in favor of waiver.

[(emphasis added)]

This shows the Law Division judge departed from the policies established by the Supreme Court and the Attorney General and impermissibly conduced a de novo review of the factors he found most relevant and to reach a conclusion untethered from the abuse of discretion standard of review.

Based on this record, we affirm the Law Division's order finding defendant guilty of committing simple assault against MCCC inmate Jardines. It is undisputed that defendant kicked Jardines in the midsection of his body,

while Jardines laid on the floor. On the issue of forfeiture, it is also undisputed that defendant committed this offense while serving as a corrections officer. We hold that the State properly sought the forfeiture of defendant's public position pursuant to N.J.S.A. 2C:51-2(a)(2) because this offense was related directly to defendant's performance as a corrections officer. We thus reverse the Law Division's order denying the MCPO's application for the forfeiture of defendant's public position as a Mercer County Corrections Officer.

Affirm in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17