**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3374-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RYAN E. COLES,

    Defendant-Appellant.

_____

Argued April 17, 2024 – Decided May 6, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 17-04-0219.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Zachary G. Markarian, of counsel and on the briefs).

Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Deborah Bartolomey, of counsel and on the brief).

PER CURIAM

Following a bench trial, the court convicted defendant Ryan E. Coles of the first-degree murders of his parents, Edward Coles, Jr. (Edward Jr.) and Rosemarie Coles, and related weapons offenses.[1] Defendant appeals, arguing his convictions should be reversed because the court failed to adequately establish that he knowingly, voluntarily, and intelligently waived his right to a jury trial. We agree and, therefore, reverse his convictions and remand for a new trial.

I.

In August 2016, defendant, then twenty-eight years old, resided with his parents in their home. On the morning of his parents' murders, Edward Jr. sent defendant a message stating that he and defendant's mother were moving to a one-bedroom residence in a "[fifty-five] and older community soon." Defendant later spent the afternoon with his grandfather, Edward Coles, Sr. (Edward Sr.), assembling furniture at Edward Sr.'s home.

After Edward Sr. drove him home, defendant took photos of himself holding up sheets of paper with messages, including "This hurts beyond

---

[1] Because the individuals involved in this matter share a surname, we use first names as appropriate for simplicity and to avoid confusion. We intend no disrespect in doing so.

A-3374-21

measure. Constant pain. Help me. Ryan. Please God, I want to die," "Pop him in the face," and "Kick Junior's fucking ass, Pops. He's the asshole causing all this trouble." Defendant also sent a series of messages to his uncle, requesting help to "kick [Edward Jr.'s] ass."

That evening, Edward Sr. unsuccessfully attempted to contact Edward Jr. by telephone. The next morning, Edward Sr. continued his efforts to contact Edward Jr. by telephone but could not reach him. Edward Sr. called Edward Jr.'s place of employment and was advised Edward Jr. had not arrived. Edward Sr. contacted defendant, who said his father had been up all night ill and vomiting.

Edward Sr. went to the home defendant shared with his parents. Edward Sr. asked defendant about the location of his parents and defendant pointed to a pile of laundry on the floor of the home's foyer. Edward Sr. realized the clothes concealed defendant's parents' bodies, and he called the police.

The police found defendant's parents bloodied and badly-injured bodies under the laundry pile. Police also discovered pieces of wood from a broken chair. At the scene, defendant said he had had an altercation with his parents the prior evening and he had been "struck with an object."

A-3374-21

After receiving medical attention at a hospital for possible injuries to his hands, defendant later explained to police that he had had an altercation with his parents and "chairs got brought into the situation." He admitted he had beaten both parents with his fists, a wooden chair, and a glass bowl. Defendant also told the police, "I'll never forgive myself for what I just did to my mom."

In April 2017, a grand jury returned an indictment charging defendant with fourth-degree unlawful possession of a weapon, a wooden chair or its parts, N.J.S.A. 2C:39-5(d), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1).

At a sidebar discussion with counsel during a December 9, 2019 court proceeding, the judge stated that during a conference in the court's chambers there was a "consensus" that defendant "probably didn't need to submit a written motion" for a waiver of his right to a jury trial. During the sidebar conference, the court also confirmed, apparently based on discussions in chambers, that the anticipated defense would be "not guilty by reason of insanity," and the State intended to contest that defense.

Counsel and the court then discussed issues related to the scheduling of the trial, agreeing the trial should take place the following month. When defense

4

counsel stated she would file a written motion for a non-jury trial, the court said a written motion would be unnecessary and "the reason" for that day's proceeding was to address defendant's request for a bench trial. The prosecutor advised the court the State would not object to defendant's request.

Following the sidebar conference, the court addressed defendant for the first time, explaining it had spoken to counsel "up here at the bench . . . in regard to where the case is going" and that there was a motion the court was "going to hear now." Defense counsel then moved for a bench trial, stating defendant "wishes to waive his right to a jury trial." The prosecutor advised the court the State did not object.

Prior to making any inquiry of defendant concerning his counsel's motion to waive a jury trial and proceed with a non-jury trial, and in defendant's presence, the court stated, "I am going to grant the motion to do a bench trial." Without administering any oath to defendant or obtaining an affirmation he would answer the court's questions truthfully, the court then engaged in the following brief colloquy with defendant:

> THE COURT: You understand, sir, that you're entitled to a jury trial, but based upon your discussions with your attorney, they feel that the bench trial is the best option for you. Do you understand that?
>
> DEFENDANT: Yes.

5

> THE COURT: And do you understand that you're waiving a jury trial and the judge—me, the judge, or another judge, will be hearing the matter, making the determination in regard to the issues of guilt or other motions that may be associated with the trial?
>
> DEFENDANT: Yes.
>
> THE COURT: And you agree with that?
>
> DEFENDANT: Yes.

The court did not make any findings of fact or conclusions of law concerning defendant's motion. Instead, the court addressed scheduling issues, discussed anticipated dates for the trial, and provided a date the following month for the parties to return. The court's only reference to defendant's motion following the colloquy was to request that counsel submit a memorializing order they "both agree[d] with." The court entered an order that day granting defendant's motion.

Defendant's six-day bench trial took place before a different judge in February 2022. During trial, the parties stipulated to certain facts and the admission of evidence and the State presented witnesses supporting its claim defendant had committed the charged offenses. Defendant presented Dr. Julia Weinberg, Ph.D., who was qualified as an expert in forensic psychology, in support of his claim he was not guilty by reason of insanity. The State presented

6

Dr. Steven Simring, M.D., who was qualified as an expert in the field of forensic psychiatry, in support of its claim defendant did not suffer from a mental disease or defect at the time of the murders such that could be he should not be found not guilty by reason of insanity.

Following the presentation of evidence and counsel's summations, the court rendered a detailed and thorough opinion from the bench. The court summarized the evidence, made findings of fact and credibility determinations, and found the State had satisfied its burden of proving defendant's guilt beyond a reasonable doubt on each of the charges. The court determined the State had proved defendant acted knowingly and purposely in causing his parents' deaths and rejected defendant's claim he was not guilty by reason of insanity.[2]

At sentencing, the court merged the weapons offenses with defendant's murder convictions and considered, found, and weighed the statutory aggravating and mitigating sentencing factors. See N.J.S.A. 2C:44-1(a) and (b). The court imposed consecutive forty-year sentences subject to the requirements

---

[2] Defendant does not argue on appeal there were any errors during the trial proceedings or in the court's findings of fact and conclusions of law warranting a reversal of his conviction. Defendant's challenge to his convictions on appeal is limited to his claim the judge who granted the motion for a non-jury trial erred by doing so.

of the No Early Release Act, N.J.S.A. 2C:43-7.2, on the murder convictions, resulting in an aggregate eighty-year sentence. This appeal followed.

In his merits brief, defendant offers the following arguments in support of his challenge to his convictions and sentence:

> POINT I
>
> [DEFENDANT]'S BENCH TRIAL CONVICTIONS MUST BE REVERSED BECAUSE THE TRIAL COURT FAILED TO INFORM HIM OF THE INFORMATION REQUIRED BY OUR SUPREME COURT TO ENSURE THAT HIS WAIVER OF HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL WAS KNOWING AND VOLUNTARY.
>
> POINT II
>
> THE COURT DID NOT GIVE SUFFICIENT WEIGHT TO [DEFENDANT]'S WELL-DOCUMENTED HISTORY OF MENTAL HEALTH ISSUES AND DYSFUNCTIONAL HOME ENVIRONMENT AT SENTENCING.

In his reply brief, defendant offers the following argument:

> POINT I
>
> THE TRIAL COURT FAILED TO PROCURE A VALID VERBAL OR WRITTEN WAIVER OF [DEFENDANT]'S CONSTITUTIONAL RIGHT TO A JURY TRIAL.

8

II.

The right to a jury trial is a fundamental right guaranteed by the New Jersey and United States constitutions. See U.S. Const. amend. VI; N.J. Const. art. I, ¶ 9; see also State v. Dunne, 124 N.J. 303, 316 (1991) (explaining a "trial by jury is fundamental to the American system of criminal justice"). To maintain confidence in the criminal justice system, "[t]rial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact[.]" Dunne, 124 N.J. at 310 (quoting Patton v. United States, 281 U.S. 276, 312 (1930)). As such, a waiver of the right to trial by jury should not be presumed, State v. Campbell, 414 N.J. Super. 292, 301 (App. Div. 2010), and must be made "voluntarily, knowingly, and competently," Dunne, 124 N.J. at 317.

Rule 1:8-1 governs jury-trial waivers and provides "[c]riminal actions required to be tried by a jury shall be so tried unless the defendant, in writing and with the approval of the court, after notice to the prosecuting attorney and an opportunity to be heard, waives a jury trial." R. 1:8-1(a). In its consideration of a request to waive a jury trial in a criminal action, a court should

> (1) determine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;

9

(2) determine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and

(3) determine, with an accompanying statement of reasons, whether, considering all relevant factors, . . . it should grant or deny the defendant's request in the circumstances of the case.

[Dunne, 124 N.J. at 317.]

Factors relevant to the court's determination of a request to waive a jury trial include: "the judiciary's obligation 'to legitimately preserve public confidence' in the administration of justice"; the "gravity of the crime" and "complexity" of presenting the case; "the position of the State"; and "the amenability of the issues to jury resolution, [and] the existence of a highly-charged emotional atmosphere." Id. at 315, 317 (citations omitted). A decision to permit a defendant to waive a jury trial "rest[s] in the sound discretion of the trial court," id. at 318, and, in making the determination, "a court must consider the competing factors that argue for or against jury trial," id. at 315.

A court's determination of a defendant's request to waive a jury trial must be founded on "sources of principled decision-making . . . rooted in a statement of reasons" accompanying the decision. Id. at 317. As our Supreme Court has explained, the "statement of reasons will give structure to the trial court's discretionary judgment and will soundly guide appellate review." Ibid.

In State v. Blann, the Court established two requirements to ensure defendants possess a full understanding of their "choice" when deciding to waive the right to a jury trial. 217 N.J. 517, 518 (2014). First, a defendant must sign a "written waiver form" advising

> that (1) a jury is composed of [twelve] members of the community, (2) a defendant may participate in the selection of jurors, (3) all [twelve] jurors must unanimously vote to convict in order for a conviction to be obtained, and (4) if a defendant waives a jury trial, a judge alone will decide [his or her] guilt or innocence.
>
> [Ibid. (quoting State v. Blann, 429 N.J. Super. 220, 250 (App. Div. 2013) (Lisa, J., dissenting)).]

Second, trial judges must also "engage in a colloquy with defendants that includes those four items, at a minimum, to assess the voluntariness of a waiver request." Ibid.

The Court has more recently noted that its decision in Blann "establish[ed] procedures that trial judges must follow to accept a waiver of the right to trial by jury." Orientale v. Jennings, 239 N.J. 569, 592 (2019). And we have long held that "[a] defendant's mere acquiescence in proceeding without a jury . . . is not sufficient to constitute a waiver of [the] right to a jury trial." State v. Wyman, 232 N.J. Super 565, 568 (App. Div. 1989).

Measured against these standards, we reverse defendant's convictions and remand for further proceedings and a new trial. By simply accepting defendant's putative waiver of his right to a jury trial, the court did not comply with <u>Blann</u>'s requirements. Perhaps that is explained by the fact that the court announced to defendant and counsel that it would grant defendant's motion for a bench trial prior to engaging in any colloquy with defendant at all.

In any event, in the cursory colloquy with defendant that followed its stated intention to grant the motion, the court addressed with defendant only one of the four advisements required under <u>Blann</u>. The court asked defendant only if he understood that a judge and not a jury would decide his guilt if he waived his right to a jury. The court did not inform defendant that a jury is composed of twelve members of the community, all jurors must unanimously vote to convict for a conviction to be obtained, and a defendant may participate in jury selection, and the court did not inquire if defendant understood those basic principles. Those failures violated <u>Blann</u>'s requirements, 217 N.J. at 518, and rendered it impossible for the court to make a reasoned determination that defendant was voluntarily, knowingly, and competently waiving his right to a jury trial. Moreover, the court failed to obtain the requisite written waiver of defendant's right to a jury trial required under <u>Rule</u> 1:8-1(a) and <u>Blann</u>.

The court's terse colloquy with defendant also left it without a record to engage in the "principled decision-making" required to decide whether to accept a criminal defendant's request for a bench trial. See Dunne, 124 N.J. at 317. Lacking such a record, and again perhaps because the court had decided to grant the motion even before it engaged in any colloquy with defendant, the court did not address, decide, or make any findings concerning the factors pertinent to a determination whether to grant or deny a request for a bench trial in a criminal case. See generally id. at 317. That failure is particularly egregious here because defendant's motion sought a waiver of his right to a jury trial in a case in which he was charged with two first-degree murders, and the gravity of those offenses therefore "tilted" in favor of denying defendant's motion but that was not considered by the court. Ibid.

In sum, the court abused its discretion by granting defendant's motion because the court had failed to consider or apply the correct legal standard, its colloquy with defendant did not satisfy the minimum requirements for a waiver under Blann, and it failed to provide any reasoned explanation—the court provided no explanation at all—for its order granting defendant's motion. See Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (explaining a court abuses its discretion when its decision is "made without a rational explanation,

inexplicably departed from established policies, or rested on an impermissible basis"). We therefore reverse defendant's convictions and remand for a new trial.

We do not find it necessary to address the State's arguments in support of its claim the court adequately complied with <u>Blann</u>'s requirements or that the record otherwise permits a finding defendant knowingly, voluntarily, and competently waived his right to a jury trial. The arguments ignore <u>Blann</u>'s plainly stated requirements and the trial court's wholly-inadequate colloquy with defendant concerning the bench-trial request. We otherwise find the State's arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Because we reverse defendant's convictions, it is unnecessary to address his claim the court erred at sentencing by failing to correctly find and weigh mitigating factor four, N.J.S.A. 2C:44-1(b)(4), in its determination of defendant's sentence.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14