**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A- 1716-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

VITALIY SHTABNOY,

     Defendant-Appellant.

_____

Argued June 8, 2021 – Decided July 8, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 19-05-0287.

Joshua H. Reinitz argued the cause for appellant (Iacullo Martino, LLC, attorneys; Joshua H. Reinitz, of counsel and on the briefs).

Lauren E. Bland, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Lauren E. Bland, of counsel and on the brief).

PER CURIAM

Defendant Vitaliy Shtabnoy was charged with fourth-degree attempted criminal trespass, N.J.S.A. 2C:5-1(a)(3) and N.J.S.A. 2C:18-3(a), and disorderly persons obstruction, N.J.S.A. 2C:29-1(a). Despite having a limited, non-violent criminal record, he was detained pretrial. After almost seven months in jail, he agreed to have a judge decide his case, but he did not sign the required jury-trial waiver form. Nor did the trial judge question defendant or make findings that defendant's jury waiver was knowing, voluntary, and competent.

Following the bench trial, the judge found defendant guilty on both charges. Defendant was sentenced to six months imprisonment on the attempted trespass charge and, concurrently, ten days imprisonment on the obstruction charge, then released because he had already served 212 days in jail. Defendant appeals, contending that his jury waiver was not proper. We agree and vacate defendant's convictions.

I.

On February 5, 2019, a fourteen-year-old girl called 9-1-1 to report that a man had followed her to her home and was "trying to get in." A responding police officer found defendant walking in the neighborhood. Under questioning by the police officer, defendant eventually stated that he had followed the girl, thinking that he knew her. Defendant also acknowledged that he had gone up to

2

the door of the girl's home and knocked on the door. Later, defendant explained he had left when the girl did not answer the door.

The police officer ran a background check and learned that defendant had two outstanding arrest warrants for failure to appear in municipal court. The officer arrested defendant and placed him in handcuffs. According to the officer, defendant resisted being placed in the police car. That same day, defendant was charged with attempted criminal trespass and obstruction.

The State moved to detain defendant pretrial under the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26. Defendant did not have any prior indictable convictions, but he did have a disorderly persons conviction for possession of marijuana and a conviction for a violation of a local ordinance. The trial court granted the State's application to detain defendant, citing "the seriousness of the underlying offense" and "defendant's apparent mental condition." Although referencing defendant's "mental condition," the trial court did not order a psychological or psychiatric evaluation of defendant.

In May 2019, defendant was indicted for fourth-degree attempted criminal trespass. On July 29, 2019, nearly six months into his detention, defendant moved to reopen his detention hearing. The trial court heard oral arguments on that motion on August 9, 2019. Although defendant's mental health was

3

discussed, no mental-health evaluation of defendant was submitted to the court. Instead, there was a discussion that while defendant was being detained, he had been sent from the jail to a hospital for evaluations due to concerns about his mental health. Defendant was referred to a second hospital for admission. Ultimately, the second hospital discharged defendant back to the jail. The second hospital's discharge summary indicated that defendant had been diagnosed with depression. The trial court denied defendant's application to be released from pretrial detention.

On August 26, 2019, defendant and his counsel appeared for a pretrial conference before a different judge. During that conference, there was a discussion concerning when the matter would proceed to trial. Defense counsel stated that he wanted to have his client evaluated by a psychiatrist, and that evaluation was scheduled for September 11, 2019. Defense counsel also emphasized that defendant was anxious to proceed to trial as soon as possible and he would be willing to proceed to trial without the psychiatric evaluation.

The trial judge pointed out that defendant had already served more time in pretrial detention than he was likely to be sentenced to serve if convicted. The judge also stated that a jury trial would probably not proceed until at least September 30, 2019. The trial judge then stated that if defendant was willing to

4

waive a jury trial, the matter could proceed to trial the following week on September 3, 2019.

Defendant and his counsel conferred, and defendant then agreed to have the judge try his case. In that regard, defendant and his counsel had the following exchange on the record:

> [DEFENSE COUNSEL]: Mr. Shtabnoy, do you wish to waive a jury trial and have this case go before the bench, by a criminal judge as the trier of fact on the week of September 3rd?
>
> THE DEFENDANT: Yes.
>
> [DEFENSE COUNSEL]: Yes, Judge, we're going to waive.

The trial judge did not question defendant, and defendant did not review a written waiver of his right to a jury trial. Indeed, the State objected to defendant's waiver and pointed out that he needed to complete a written waiver form.

On September 3, 2019, defendant and his counsel appeared for the first day of trial. Concerning the jury waiver, defense counsel questioned defendant on the record as follows:

> [DEFENSE COUNSEL]: Now, Vitaliy, you and I have had a discussion about the fact that you have the right to a jury trial, do you understand that, correct?

THE DEFENDANT: Correct.

[DEFENSE COUNSEL]: Okay. And you also understand that you were offered the opportunity to waive a jury trial in order to have your case heard more quickly, is that correct?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: Okay. And you have elected to waive your right to a jury trial and have the facts of the case decided by [the judge] in order that you may have a trial today, is that correct?

THE DEFENDANT: Based on advisement, correct.

[DEFENSE COUNSEL]: Okay, I believe that satisfies what we need here, Judge.

THE COURT: [Assistant prosecutor], you want –

[ASSISTANT PROSECUTOR]: The State's satisfied, your Honor.

THE COURT: All right.

Defendant did not review and submit a written jury-trial waiver form. The trial judge also did not question defendant, nor did the trial judge make findings that defendant's waiver was knowing, voluntary, and competent.

The matter then proceeded to trial on September 3 and 4, 2019. At trial, five witnesses testified: the girl, two police officers, defendant, and defendant's mother. Regarding the attempted-criminal-trespass charge, the key issue was

whether defendant attempted to open the door of the girl's home. On that issue, the girl testified that defendant had come to her front door and had rung the bell before "jiggling the [door]knob."

Ultimately, the trial judge relied on the girl's testimony and found that defendant had taken a substantial step in trying to enter the home by opening the storm door and turning the innermost door's knob. Accordingly, the judge found that the State had established defendant's guilt of attempted criminal trespass beyond a reasonable doubt. The trial judge also found that defendant was guilty of obstruction because he resisted being placed in the police car.

Having found defendant guilty, the court released defendant on September 4, 2019. On November 21, 2019, defendant was sentenced to six months of incarceration on the attempted-criminal-trespass conviction. He was also sentenced to a concurrent ten days of imprisonment on the obstruction charge. Because defendant had already served 212 days in jail, defendant's sentence was deemed to have already been served.

II.

Defendant appeals his convictions and makes two arguments, which he articulates as follows:

> POINT ONE: THE VERDICT MUST BE VACATED
> AS DEFE[ND]ANT'S WAIVER OF TRIAL BY JURY

A- 1716-19

WAS MADE CONTRARY TO COURT RULE AND CONTROLLING PRECEDENT.

POINT TWO: THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT DEFENDANT ATTEMPTED TRESPASS OF A DWELLING[.]

We hold that there is no showing that defendant made a knowing, competent, and voluntary waiver of his right to a jury trial. Accordingly, we reverse and vacate his convictions. Given that holding, we need not address defendant's contention that there was insufficient evidence to support his conviction of attempted criminal trespass.

The constitutional right to "trial by jury is fundamental to the American system of criminal justice." State v. Dunne, 124 N.J. 303, 316 (1991); see also State v. Campbell, 414 N.J. Super. 292, 298, 301 (App. Div. 2010). To maintain confidence in the criminal justice system, "[t]rial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact." Dunne, 124 N.J. at 310 (quoting Patton v. United States, 281 U.S. 276, 312-13 (1930)). Accordingly, any waiver of that right must be made knowingly, voluntarily, and competently. Id. at 317; see also Campbell, 414 N.J. Super. at 297, 301 (explaining that a waiver cannot be presumed).

Rule 1:8-1 governs jury-trial waivers. Under Rule 1:8-1(a), criminal matters are required to be tried by a jury "unless the defendant, in writing and with the approval of the court, after notice to the prosecuting attorney and an opportunity to be heard, waives a jury trial." When considering the request, courts must:

> (1) determine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;
>
> (2) determine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and
>
> (3) determine, with an accompanying statement of reasons, whether, considering all relevant factors, . . . it should grant or deny the defendant's request in the circumstances of the case.
>
> [Dunne, 124 N.J. at 317.]

Relevant factors include, but are not limited to, "the judiciary's obligation 'to legitimately preserve public confidence' in the administration of justice"; the severity of the charges; the State's position; "the amenability of the issues to jury resolution, [and] the existence of a highly-charged emotional atmosphere." Id. at 315, 317 (citations omitted).

In 2014, our Supreme Court, exercising its supervisory powers, established two mandates to ensure defendants possess a full understanding of

their choice when waiving a jury trial. State v. Blann, 217 N.J. 517, 518 (2014).

First, a written waiver form must be reviewed by a defendant. Ibid. The form

must advise defendant

> that (1) a jury is composed of [twelve] members of the community, (2) a defendant may participate in the selection of jurors, (3) all [twelve] jurors must unanimously vote to convict in order for a conviction to be obtained, and (4) if a defendant waives a jury trial, a judge alone will decide [his or her] guilt or innocence.
>
> [Ibid. (quoting State v. Blann, 429 N.J. Super. 220, 250 (App. Div. 2013) (Lisa, J., dissenting)).]

Second, the Court required "that trial judges engage in a colloquy with

defendants that includes those four items, at a minimum, to assess the

voluntariness of a waiver request." Ibid. A defendant who later disputes the

validity of his or her waiver has the burden of making "a plain showing that such

waiver was not freely and intelligently made." Adams v. United States, 317 U.S.

269, 281 (1942); accord State v. Jackson, 272 N.J. Super. 543, 551 (App. Div.

1994).

The procedures required to ensure a valid waiver were not followed in this

case. Defendant did not review the official jury-waiver form. Moreover, the

trial judge did not engage in a colloquy with defendant and did not review the

four minimum items to assess the voluntariness of defendant's waiver request.

10

Furthermore, the trial judge never made findings that defendant's waiver was made voluntarily, knowingly, and competently.

The questioning by defendant's counsel covered only one of the four minimum items. In that regard, defendant was told that the judge would be deciding his guilt or innocence. Critically, nothing in the record reflects that defendant was advised that "(1) a jury is composed of [twelve] members of the community, (2) a defendant may participate in the selection of jurors, [and] (3) all [twelve] jurors must unanimously vote to convict in order for a conviction to be obtained." Blann, 217 N.J. at 518.

Defendant's competence to make a knowing and voluntary jury-trial waiver was of particular concern given the surrounding circumstances. When defendant made his waiver, he had been detained for over six months based primarily on concerns about his mental condition. The trial judge made no inquiry into defendant's mental condition. We do not suggest that there was evidence raising a concern about defendant's competence. Instead, we hold that when a defendant has been detained pretrial because of concerns about his mental condition, that is a circumstance that should be assessed in evaluating a request to waive a jury trial.

A- 1716-19

In addition, the discussion that took place at the August 26, 2019 pretrial conference suggests that defendant was agreeing to the trial by the judge only so that he could be released from jail. That is a Hobson's choice that no defendant should be asked to make.

The State argues that defendant's waiver was sufficient because he was twice questioned by defense counsel on the record. In support of that argument, the State relies on the Supreme Court's adoption of Judge Lisa's dissenting opinion in Blann, 429 N.J. Super. at 235. See Blann, 217 N.J. at 518. We reject that argument. In Blann, the questioning of defendant was conducted by the trial judge and covered the contents of the then-standard jury waiver form. 429 N.J. Super. at 243-44 (Lisa, J., dissenting). More to the issue, as already pointed out, in Blann our Supreme Court adopted two requirements for an effective jury waiver. 217 N.J. at 518. Neither of those requirements were complied with in this case.

We also reject the State's argument that the waiver issue was invited error. The State's reliance on the invited-error doctrine is misplaced. The doctrine is "implicated only when a defendant in some way has led the court into error." State v. Jenkins, 178 N.J. 347, 359 (2004); see also State v. Mauti, 448 N.J. Super. 275, 316-18 (App. Div. 2017) (explaining principles underlying invited

error doctrine). The trial judge had the responsibility of ensuring that defendant had reviewed the official jury-waiver form and to question defendant on the record to assess his request and to make findings that the waiver was knowing, voluntary, and competent. The questioning by defense counsel did not trigger the invited-error doctrine.

Reversed. Defendant's convictions are vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION